Argued and submitted September 19, 1986, judgment vacated July 29, 1987

## STATE ex rel MEYERS et al,
*Respondents,*

*v.*

## HOWELL et al,
*Appellants.*

(DA 297860, 297858, 297859, 297857; CA A37503)

740 P2d 792

Stephen S. Walters, Portland, argued the cause for appellants. With him on the brief was Stoel, Rives, Boley, Fraser & Wyse, Portland.

Michael V. Phillips, Eugene, argued the cause and filed the brief for respondents Jeanne Fryer and Julie Powell.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Keith B. Rogers, Metropolitan Public Defender, Portland, waived appearance for respondent Susan Meyers.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The Oregonian Publishing Company (the Oregonian) appeals from a judgment of contempt against it that was entered in a contempt proceeding that arose out of three misdemeanor prosecutions against the individual plaintiffs. Plaintiffs subpoenaed defendants Howell and the Oregonian to produce for discovery unpublished photographs that were taken by Howell at the scene of a political demonstration while she was on assignment as a reporter for the Oregonian. They sought the photos for the purpose of clearing up some potential inconsistencies in the prosecution and defense evidence. Defendants moved to quash the subpoenas, relying on Oregon's Media Shield Law, ORS 44.510 *et seq*, the First Amendment and Article I, section 8, of the Oregon Constitution. The district court denied the motion and ordered defendants to produce the photographs for *in camera* inspection so that the court could determine their discoverability and admissibility. When the Oregonian refused, the court held it in contempt. The court also fined it $300 pursuant to ORS 33.020(1) and ordered that the executive editor be confined in jail pursuant to ORS 33.020(2) until the contempt was purged. Both sentences were stayed pending appeal.

Since the filing of the appeal, the case has followed a somewhat curious path. Defendants' brief assigns error to the trial court's ordering an *in camera* inspection, on the ground that plaintiffs had not made an adequate showing of need for the shielded material. In the alternative, they assert that the Media Shield Law is "jurisdictional" and that the court had no jurisdiction to compel the production of the documents.

After the filing of defendants' and plaintiff Meyers' brief, plaintiffs apparently began to doubt whether they should be contesting the Media Shield Law, and they moved to vacate the contempt and dismiss the appeal as moot or, in the alternative, to remand the case to district court. We denied the motion with leave to renew at argument. Meyers moved to withdraw her brief and to waive appearance in this court; we granted that motion. The attorney for plaintiffs Fryer and Powell filed a motion to withdraw as counsel. Attached to the motion was an affidavit of Fryer and Powell setting forth their philosophical metamorphoses and their decision not to challenge the Media Shield Law. Their brief,

filed by new counsel, outlines the course of events just described and asserts that the appeal is now moot, because plaintiffs no longer want the subpoenaed photos.

Plaintiffs argue that the Oregonian seeks resolution of issues over which there is no controversy; that it matters not whether the court's ruling requiring the Oregonian to submit the photos was legally correct, because they no longer seek the photos, and that there is nothing for us to decide on appeal, because plaintiffs do not seek to uphold the court's allegedly erroneous ruling. In the alternative, were we to choose to decide the case on its merits, plaintiffs argue that the Media Shield Law implicates their right to compulsory process and that the trial court's ruling ordering an *in camera* inspection is consistent with the balancing of the concerns present in a conflict between the Compulsory Process Clause, Or Const, Art I, § 11, and the media shield. They disagree with defendants' position that the shield law deprives the court of jurisdiction to order an *in camera* inspection.

The state's brief takes a position that is somewhat inconsistent with its capacity "ex rel" the individual plaintiffs. It asserts that the trial court's ruling was erroneous, because the statutory shield is absolute and does not conflict with the Compulsory Process Clause. In the alternative, if the two provisions do conflict, the state asserts that the shield must not be upheld when substantial prejudice to a criminal defendant has been shown. The state agrees with plaintiffs that the trial court had jurisdiction to decide whether the statute and the Compulsory Process Clause conflict.

We agree with plaintiffs that, with respect to the jail sentence, the civil aspect of the contempt, there is no longer a controversy, because plaintiffs do not now assert a position that conflicts with defendants' claimed shield. Therefore, the court's order that the Oregonian's executive editor be confined in jail until the newspaper should comply with its order is vacated. However, plaintiffs' decision to withdraw the subpoenas does not erase the criminal aspect of the contempt. The trial court imposed a $300 fine for the Oregonian's completed contempt. That contempt cannot be avoided, even by a withdrawal of the subpoenas. *See State v. Thompson,* 294 Or

528, 659 P2d 383 (1983). We conclude that the appeal is not moot[1] with respect to the criminal contempt.

On the merits, the question is whether the Oregonian may be adjudged in criminal contempt for its refusal to comply with an order of the court to produce photos for the court's *in camera* inspection. The answer depends on whether the absolute media shield conflicts with a criminal defendant's constitutional right to compulsory process.

■ The Supreme Court decided in 1968 that reporters have no state or federal *constitutional* right to refuse to testify before grand juries. *State v. Buchanan,* 250 Or 244, 436 P2d 729 (1968). The United States Supreme Court later reached the same conclusion with respect to the federal constitution in *Branzburg v. Hayes,* 408 US 665, 92 S Ct 2646, 33 L Ed 2d 626 (1972). We conclude that those decisions answer defendants' constitutional claims here. Both the United States and Oregon Supreme Courts left open, however, the possibility that the state could enact legislation establishing protections for the media. In 1973, the Oregon legislature enacted the Media Shield Law, codified as ORS 44.510 to ORS 44.540, in what might be perceived as a direct response to that invitation. ORS 44.520(1) provides, in part:

"No person connected with, employed by or engaged in any medium of communication to the public shall be required by a legislative, executive or judicial officer or body, or any other authority having power to compel testimony or the production of evidence, to disclose, by subpoena or otherwise:

"(a) The source of any published or unpublished information obtained by the person in the course of gathering, receiving or processing information for any medium of communication to the public; or

"(b) Any unpublished information obtained or prepared by the person in the course of gathering, receiving or processing information for any medium of communication to the public."

"Unpublished information" is defined in ORS 44.510 to include

---

[1] The judgment of contempt remains the final judgment from which the Oregonian appeals. There continues to be a justiciable controversy. *See Kay v. David Douglas School Dist. No. 40,* 303 Or 574, 738 P2d 1389 (1987).

"all notes, outtakes, photographs, tapes or other data of whatever sort not themselves disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated."

On its face, ORS 44.520(1) protects absolutely materials that fall within the shield, which include "any unpublished information obtained * * * in the course of [newsgathering]" and not just confidential information or its source. ORS 44.510 expressly includes photographs "or other data of whatever sort" within the scope of "unpublished information" protected from disclosure by ORS 44.520. We conclude that the photographs sought by plaintiffs fall within the protection of the media shield.

Oregon's leading case on the Compulsory Process Clause, Article I, section 11,[2] is *State ex rel Gladden v. Lonergan,* 201 Or 163, 269 P2d 491 (1954). There, the defendant sought to compel the state to produce a witness who was incarcerated in another county, in the face of the state's attempt to require the defendant to produce the witness's testimony through deposition, as required by statute. The trial court ordered the state to produce the witness, but it refused to do so. In upholding the trial court's order of contempt and in overturning the statute as it applied to criminal proceedings, the Supreme Court stated that the right to compulsory process is "usually absolute, at least as to process for necessary and material witnesses * * *." 201 Or at 188. (Emphasis supplied.) It further stated:

"The right to compulsory process for necessary and material witnesses on his behalf is a valuable right guaranteed to an accused. It is a right that cannot be denied by legislative act or failure to act. In the interest of justice, it is the duty of courts to enforce the right. When all is said and done, in every criminal proceeding, as well as in the trial of all other cases, the primary aim of the law is to arrive at the truth of the matter in controversy, and no obstacle should be sanctioned that would

---

[2] Or Const, Art I, § 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

deny the presence of a competent witness who has knowledge of material facts." 201 Or at 189.

Notwithstanding that strong language, the state points out that it is by no means clear that the right to compulsory process overrides an absolute statutory privilege, given the historical origin of the constitutional provision. At early common law, neither the prosecution nor the defendant in a criminal case could compel the attendance of witnesses or their testimony. Evidence was gathered by a jury. Bellamy, *Crime and Public Order in England in the Late Middle Ages* 147 (1973). Later, the Crown was permitted to call witnesses, but the defendant was not. Weston, "The Compulsory Process Clause," 73 Mich L Rev 71, 78-82 (1974). Reformers proposed eliminating the disparity between the prosecution's and the defense's ability to put on a case, and Parliament responded, albeit slowly. 31 Eliz, ch 4, § 2 (1589); 4 Jac 1, § 1 (1607); 1 Anne 2, ch 9, § 3 (1701).

Nine of the original state constitutions contained provisions guaranteeing an accused the right to produce witnesses in his behalf. Weston, *supra,* 73 Mich L Rev at 94. The provision that was adopted in the federal Bill of Rights was authored by James Madison in response to demands from four states. Weston, *supra,* 73 Mich L Rev at 97. In the light of that background, the state argues that the Compulsory Process Clause was not intended to establish a blanket defense right to compel testimony. *See Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967); *State v. Mai,* 294 Or 269, 656 P2d 315 (1982). It contends that the application of a statutory privilege has been held to give rise to a compulsory process claim only when the statute is unequal in its treatment of the defendant, is arbitrary, irrational or overbroad, or is asserted by the government, rather than by the witness, in order to prevent the defendant from cross-examining a state witness.

The state also asserts that its historical roots show that the Compulsory Process Clause was not intended to override legitimately established, nonarbitrary testimonial privileges and that, in fact, it must yield to those privileges. That is the view of one commentator. 8 Wigmore, *Evidence* § 2191 (1961); *see also Washington v. Texas, supra,* 388 US at 22 n 21 ("Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-

incrimination or the lawyer-client or husband-wife privilege, which are based on entirely different considerations * * *"); *State ex rel Gladden v. Lonergan, supra,* 201 Or at 177 ("There is nothing to indicate that the framers of our constitution intended thereby to do away with well established exceptions to the confrontation rule.").

Recently, however, state courts considering Compulsory Process Clause challenges to media shield laws have seized upon *Washington v. Texas, supra; Davis v. Alaska,* 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974), and *Chambers v. Mississippi,* 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973), as suggesting the potential for a conflict between the shield and the right to compulsory process. *Hammarley v. Supreme Court,* 89 Cal App 3d 388, 153 Cal Rptr 608 (1979); *State v. Boiardo,* 83 NJ 350, 416 A2d 793 (1980); *In Matter of Farber,* 78 NJ 259, 394 A2d 330 (1978). *Davis v. Alaska, supra,* in particular, lends itself to that interpretation. The statute struck down there, like some media shield laws and many common law testimonial privileges, had the protection of confidentiality as an objective. Although *Davis* is a Confrontation Clause case, there may be an analogy to the right to compulsory process.

Several law review articles have also expressed the view that, in the light of the United States Supreme Court's decisions striking down state evidentiary statutes in the face of Sixth Amendment challenges, a court would be hard pressed to conclude that any statutory communication privilege is absolute. Marcus, "The Reporter's Privilege," 25 Ariz L Rev 815 (1983); Weston, *supra; Note,* 30 Stan L Rev 935 (1978). Their reasoning is based on what the authors perceive to be the Supreme Court's recent emphasis on and expansion of a criminal defendant's Sixth Amendment rights.

From what has been said, however, it is still not as clear as one might have supposed that the exercise of a media shield to prevent the disclosure of protected materials necessarily conflicts with a defendant's right to compulsory process. We conclude, however, that this case does not require us to decide whether that conflict exists. Both state and federal cases appear to require that that evidence for which compulsory process is sought must be material and favorable before a constitutional problem is presented. That requirement reflects the constitutional language that a defendant is

to have "compulsory process for obtaining witnesses *in his favor.*" US Const, Amend VI; Or Const, Art I, § 11. (Emphasis supplied.) The court in *State ex rel Gladden v. Lonergan, supra,* used the phrase "necessary and material witnesses on his behalf." 201 Or at 189. In *United States v. Valenzuela-Bernal,* 458 US 858, 102 S Ct 3440, 73 L Ed 2d 1193 (1982), the Court referred to its earlier opinion in *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967), in affirming a conviction for violation of the immigration laws. In concluding that the defendant's right to compulsory process had not been violated by the government's deportation of two eyewitnesses, the Court stated:

> "The only recent decision of this Court dealing with the right to compulsory process guaranteed by the sixth amendment suggests that more than the mere absence of testimony is necessary to establish a violation of the right. *See Washington v. Texas* * * *. Indeed, the sixth amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him the 'compulsory process for obtaining witnesses *in his favor.*' US Const, Amend VI (Emphasis supplied.) In *Washington,* this court found a violation of this clause of the sixth amendment when the defendant was arbitrarily deprived of 'testimony [that] would have been *relevant* and *material,* and * * * *vital* to the defense.' 388 US at 867. (Emphasis supplied.) The quoted language suggests that a criminal defendant cannot establish a violation of his constitutional right to compulsory process merely by showing that deportation of the passengers deprived him of their testimony. He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense." 458 US at 867. (Footnote omitted; emphasis in original.)

■ Thus, under both the Oregon and federal constitutions, only the withholding of evidence that is material and favorable to a criminal defendant gives rise to a claim of violation of the Compulsory Process Clauses. We agree with defendants that no constitutional issue is raised here, unless plaintiffs can show that the photos are material and favorable to their defense in the criminal cases.

■ We conclude that plaintiffs have not asserted facts that would make such a showing. The photos are sought for the purpose of clearing up *possible* inconsistencies between the

criminal defendants' and the prosecution's evidence. Plaintiffs made no attempt to explain how the photos might work in their favor, how they might contradict possible prosecution testimony or even what that testimony might be. The parties stipulate that there is other evidence that is not shielded and which is available to the defendants to prove the same point; that factor weighs against the necessity for the subpoenaed evidence.

Because plaintiffs have not alleged sufficient facts to trigger an initial determination that the shielded materials must be disclosed, we need not decide whether or how, when an adequate initial showing is made, a disclosure must be made[3] to determine whether a person's rights under Article I, section 11, of the Oregon Constitution or the Sixth Amendment are implicated. Therefore, the trial court's order requiring an *in camera* disclosure was error and the judgment of contempt, based on that order, must be vacated.

Judgment vacated.

---

[3] We recognize defendants' concern that even an *in camera* disclosure is a disclosure which is arguably forbidden by the Media Shield Law. Given our disposition of this case, we do not reach that question or the question of whether the trial court's inspection of the shielded materials would have to be open to the public. *But see Oregonian Publishing Company v. O'Leary,* 303 Or 297, 736 P2d 173 (1987).