Argued and submitted April 3, affirmed September 6, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## JEFF S. PELHAM,
*Appellant.*

## (DA 488069-9304; CA A81474)

901 P2d 972

Leland R. Berger argued the cause for appellant. On the briefs were Evelyn M. Conroy and Jolles, Bernstein & Garone, P.C.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

William H. Martin, Laura T. Zagorin, and Gleaves Swearingen Larsen Potter Scott & Smith filed a brief *amicus curiae* for Northwest Television, dba KVAL Television.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant was charged with second degree criminal trespass. ORS 164.245. At arraignment, the charge was reduced to a violation, pursuant to ORS 161.565(2). After a bench trial, defendant was convicted because he failed to immediately leave a designated area that police officers had established outside the Oregon Convention Center during President Clinton's attendance at the Forest Summit in April 1993. Defendant contends that the trial court erred in denying his motion to compel a television station to release a videotape of his arrest. The issues on appeal are whether defendant's claimed error is reviewable and whether application of the Media Shield Law, ORS 44.510 *et seq*, violated defendant's right to compulsory process of favorable evidence under Article I, section 11, of the Oregon Constitution. We affirm.

On April 2, 1993, defendant was working as a reporter for radio station KBOO. While covering the Forest Summit in Portland, defendant interviewed protestors located outside the conference center and conducted a live broadcast at approximately 9:30 a.m. Using a van in the parking lot as a remote recording studio, he crossed several times from the van to the sidewalk, where the protestors were located. Numerous other members of the media were also moving into and through the area. At approximately 11:00 a.m., a new police line was established because of an increase in the number of demonstrators, and officers began telling people that they could not remain inside the barricaded area. Defendant entered the area and was told that he needed to either go into the convention center or stay outside the police line. Defendant began asking the officers questions. When he was told to leave the designated area, defendant attempted to interview Sergeant Kuchler and was ordered to leave. Defendant continued trying to get the officer to state his name and to explain why defendant, as a member of the media, had to leave. An audio tape made by defendant and entered as evidence at trial reveals that, over the next few minutes, Kuchler repeatedly told defendant that no one was allowed to stay inside the police line, that defendant had to keep moving, and that he would be arrested if he did not leave. Defendant kept repeating that he was a member of the press. Kuchler

testified that during their interaction, defendant moved a total of 10 feet in the right direction, but that his travel was not continuous. He testified that even when he physically turned defendant in the direction that would take defendant out of the barricaded area, and pointed toward where defendant had to go, defendant would take a few steps then stop, turn around, and begin asking questions again. Defendant testified that, although he was asking questions, he intended to follow the officer's order. Kuchler testified that he decided to arrest defendant when it became obvious to him that defendant would not leave. A KVAL-TV cameraman, Wernick, was on the scene and began filming when he saw defendant's arrest.

Before trial, defendant served KVAL with a subpoena *duces tecum*, requesting that it produce for his inspection the videotape containing footage of his arrest. He also filed a motion to compel production of the tape, attaching an affidavit in which defendant's attorney opined that the videotape contained material, favorable evidence and that it was the only piece of evidence that could prove that defendant was complying with the police order when he was arrested. KVAL moved to quash the subpoena on the basis of its "strict policy of nondisclosure of the source of any unpublished information obtained by an employee of KVAL who gathers news or information in their capacity as a news reporter or videographer," and on the basis of Oregon's Media Shield Law, which protects from disclosure "[a]ny unpublished information obtained or prepared by [a member of the media] in the course of gathering, receiving or processing information" for media use. ORS 44.520(1)(b).

The court denied defendant's motion to compel and granted KVAL's motion to quash. However, it ruled that the only privileged or "protected" information gathered by the cameraman was that which he had seen through the video lens, and it required Wernick to testify to whatever he had seen with the naked eye. Wernick testified that, when "some motion" caught his eye, he began filming. The motion turned out to be the arrest of defendant. Wernick neither saw nor filmed the events leading up to the arrest. The court ruled that defendant had failed to carry his burden of showing that the evidence was material and favorable, and it refused to

compel introduction of the videotape, even for *in camera* review.

Defendant's first four assignments of error challenge the various rulings that allowed KVAL to withhold the videotape. However, before addressing those assignments, we must resolve the question of whether the claimed error is reviewable. The state contends that it is not, because defendant has neither named KVAL as an adverse party in this appeal nor served the television station with a notice of appeal. The state relies on ORS 19.023(2)(a), which requires that an appellant serve the notice of appeal "[o]n all parties who have appeared in the action, suit or proceeding," and also relies on ORS 19.033(2)(a), which provides that an appellant's failure to serve the notice of appeal properly is a "jurisdictional" defect. We have not previously considered whether a private entity such as KVAL is, as a consequence of having appeared in proceedings that are collateral to a criminal trial, a "party" entitled to notice of an appeal from a subsequent criminal conviction. For the reasons that follow, we conclude that it is not.

As a general rule, appeals in criminal cases are governed by ORS chapter 138. However, that chapter contains references to statutes which govern most civil appeals. For example, ORS 138.081(1) provides that a criminal defendant's appeal "shall be taken by causing a notice of appeal in the form prescribed by ORS 19.029 to be served" on the district attorney, the trial court reporter if a transcript is required, and the clerk of the trial court. ORS 19.029 provides, in part:

"(1) The notice of appeal *shall contain* the following:

"(a) The title of the cause.

"(b) The names of the parties and their attorneys.

"(c) *A notice to all parties or their attorneys as have appeared in the action or proceedings* that an appeal is taken from the judgment or some specified part thereof and designating who are the adverse parties to the appeal." (Emphasis supplied.)

Likewise, ORS 19.023(2)(a) provides that the notice shall be served on "all parties who have appeared in the action, suit or

proceeding[.]" That requirement is "jurisdictional and may not be waived * * *." ORS 19.033(2).

The state argues that KVAL is a "party" because it specially appeared through private counsel, challenged the motion to compel and the subpoena that were directed at it, and was successful in obtaining a court order in its favor. The state also points out that the state did not appear in those proceedings and that, on appeal, defendant is seeking reversal of the orders relating to KVAL.[1]

■ Although the state's argument is enticing, because it appears to rest on the precept that a person whose interests might be adversely affected by a judicial decision should be provided an opportunity to appear and protect those interests, *see, e.g.*, ORCP 29 A, we conclude that it is misplaced in the present case. First, although ORS 138.081(1) requires that notices of appeal take "the form prescribed by ORS 19.029," the statute goes on to specify the persons on whom those notices must be served when an appeal is brought by a criminal defendant: the district attorney, the trial court clerk and, when requesting a transcript, the trial court reporter. The specific mandate in ORS 138.081(1), regarding who is to be served, controls over the general mandate in ORS 19.023(2)(a) that an appellant serve "all parties who have appeared in the action" below. *See State ex rel Juv. Dept. v. M. T.*, 321 Or 419, 426, 904 P2d 655 (1995) ("When a general statute and a specific statute both purport to control an area of law, this court considers the specific statute to take precedence over an inconsistent general statute related to the same subject."). Second, ORS 19.029(1) does no more than establish a generic format for notices of appeal, so that in all cases the notice will include the title of the case, the names of the parties and their attorneys, a "notice to all parties or their attorneys as have appeared in the action or proceedings," and a designation of the record. The only *parties* to a criminal prosecution are the state and the defendant. Witnesses to and even the victims of criminal activity are not "parties." A witness' reluctance may result in a hearing being held for the purpose of determining whether that witness must testify or

---

[1] The state suggests that, in response to defendant's failure to name or give notice to KVAL, we should dismiss the appeal or summarily affirm defendant's first four assignments of error.

produce documents. Such proceedings are related to the criminal prosecution from which a defendant may appeal under ORS chapter 138.

■    Although rulings made during such ancillary proceedings may, under certain circumstances, be challenged by filing a petition for a writ of mandamus, ORS 1.025(3); ORS 34.105 *et seq*, that is an altogether different remedy than an appeal, and one that is not controlled by ORS chapter 138 or the Oregon Rules of Civil Procedure. *See, e.g.*, ORS 34.130(2) (court may act on a petition for writ of mandamus "regardless of defects" in service, and petition may be allowed "with or without notice" to adverse parties). Here, defendant's claim arises from a denial of discovery. The law is clear that such a claim is reviewable on direct appeal from a criminal conviction. *State ex rel Automotive Emporium v. Murchison*, 289 Or 265, 268-69, 611 P2d 1169, *reh'g den* 289 Or 673, 616 P2d 496 (1980). Although rulings that *limit* a criminal defendant's discovery are properly reviewed on direct appeal,

> "[t]his is to be distinguished from a discovery order which erroneously *requires disclosure* of privileged communications, or which requires disclosure by a party (*e.g.*, the state) which has no post-trial appeal from an adverse judgment. Those cases are distinguishable in that relators suffered an irretrievable loss of information and tactical advantage which could not be restored to them on direct appeal. Relators here are not prejudiced by the requirement that they defer review of their claim of denial of discovery until direct appeal. Were their assertion correct, every pretrial discovery ruling would be subject to review by mandamus." *Id*. (citations omitted; emphasis supplied).

*See also State v. Crenshaw*, 307 Or 160, 168, 764 P2d 1372 (1988) (recommending mandamus, instead of contempt, as the preferred method for attacking an order compelling inspection of allegedly privileged material). Thus, the fact that a media witness is not a party and is not entitled to be served with a notice of appeal in a criminal case does not render it powerless in the event of an adverse pretrial ruling. Had the trial court required KVAL to disclose the contents of its videotape, KVAL could have filed a petition for writ of mandamus.

■     In sum, we hold that the statutory requirement that a notice of appeal be served on "all parties who have appeared in the action, suit or proceeding," ORS 19.023(2)(a); ORS 138.081(1); ORS 19.029, does not require dismissal of defendant's appeal, because KVAL, which specially appeared for the purpose of resisting defendant's subpoena and motion to compel production of the videotape, is not a "party" to this criminal case.[2] Defendant's failure to name or serve KVAL on appeal does not impair our ability to review the claimed error.

    Finally, the state argues that its goal is to preserve the conviction in this case, yet defendant's assignments of error place the state in the unwanted position of protecting the privacy of KVAL's videotape and therefore "acting as KVAL's attorney on appeal." That argument also fails. The state's interest in preserving a conviction necessarily requires it to explain why an appellate court should uphold various pretrial rulings that exclude evidence and that, as a consequence, affect the state's ability to obtain that conviction. The state no more serves as an attorney for KVAL in this appeal than it serves as an attorney for any witness who, by virtue of a pretrial order, is allowed to withhold testimony or documents that are sought by a criminal defendant, when that defendant appeals from his or her subsequent conviction.

■ ■     We turn to the merits of this appeal. Defendant contends that the trial court erred in denying his motion to compel production of the videotape, in granting KVAL's motion to quash his subpoena, in refusing to conduct an *in camera* review of the videotape to determine if it contained material, favorable evidence, and in refusing to admit the videotape into evidence on the basis of defendant's claim that it contained such evidence. He argues that the trial court's rulings, which were based on its application of Oregon's Media Shield Law, violated his constitutional right to discover exculpatory evidence. Or Const, Art I, § 11.[3]

---

[2] KVAL has requested and we have granted it leave to appear as *amicus curiae* in this case. Although its input is helpful, its presence is not a prerequisite to this appeal.

[3] Article I, section 11, of the Oregon Constitution provides, in part: "In all criminal prosecutions the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor."

The "shield law," so named because it shields certain items from discovery by providing that their disclosure cannot be compelled by subpoena or otherwise, allows a media witness to assert that certain types of information are privileged, including "[a]ny unpublished information obtained or prepared by the person in the course of gathering, receiving or processing information for any medium of communication to the public." ORS 44.520(1)(b). Here, the trial court correctly ruled that the "information obtained" in the course of cameraman Wernick's newsgathering did not include Wernick's *personal* observations, to the extent that those observations were of events that took place in public, were made with the naked eye, and did not relate to work product, informants or confidential sources.[4] Accordingly, Wernick was asked to and did recount his untaped observations of the pre-arrest interaction between defendant and the police; he was not required to reveal anything about the contents of the videotape. Defendant also submitted to the court a report made by an investigator on his behalf. The report, which summarizes an interview between the investigator and Wernick, states that Wernick does not know what led up to defendant's arrest. On the basis of this evidence and its reading of *State ex rel Meyers v. Howell*, 86 Or App 570, 740 P2d 792 (1987), the trial court ruled that it could not compel KVAL to release the videotape.

*State ex rel Meyers* presented the question of whether Oregon's Media Shield Law unconstitutionally infringes on a criminal defendant's right to compulsory process under Article I, section 11. We held that "only the withholding of evidence that is material and favorable to a criminal defendant gives rise to a claim of violation of the Compulsory Process Clauses," and concluded that the trial court in that case erred when it ordered an *in camera* disclosure of unpublished photographs that were in the possession of the media defendant (the Oregonian newspaper), because the criminal defendants who subpoenaed the photographs had not made a showing that the photos were likely to

---

[4] *Compare McNabb v. Oregonian Publishing Co.*, 69 Or App 136, 143, 685 P2d 458, *rev den* 297 Or 824 (1984), *cert den* 469 US 1216 (1985) (defendant unsuccessfully sought to compel the production of a reporter's notes, the names of persons interviewed but not named in a newspaper article, and other unpublished information about the reporter's sources) *with Hass v. Port of Portland*, 112 Or App 308, 315, 829 P2d 1008, *rev den* 314 Or 391 (1992) (media witness testified "from personal knowledge" as to what he remembered).

be both material and favorable to their defense. *Id.* at 578. They had asserted only that the photos would clear up

> "*possible* inconsistencies between the criminal defendants' and the prosecution's evidence. [They] made no attempt to explain how the photos might work in their favor, how they might contradict possible prosecution testimony or even what that testimony might be." *Id.* at 579 (emphasis in original).

We held that, because the parties in that case had not met their burden of showing sufficient facts to establish the materiality and favorability of the sought-after evidence, they had not even *triggered* an inquiry into the second issue, which was whether the shielded materials had to be disclosed on the basis of their constitutional right to compulsory process.

Below, the parties argued at length about whether defendant had met the threshold requirement articulated in *State ex rel Meyers*, and the trial court ultimately held that defendant had *not* alleged sufficient facts to justify compelling production of the videotape for *in camera* review. Defendant asserted that the videotape was favorable, because it would show him complying with the officer's order to leave, and that it was material, because it was the only evidence (other than defendant's own testimony) available to contradict police testimony. However, those assertions were not borne out by the evidence. Both Wernick's testimony and defendant's own investigative report show that Wernick did not know what had occurred prior to defendant's arrest and that he began filming *after* defendant had already been placed in handcuffs. Because the videotape did not contain footage of defendant's actions in the moments leading up to the arrest — the stage at which defendant claims he was complying with the officer's order to leave — it provided no evidence that disproved the trespass charge.[5] Further, there was no need to "contradict" the testimony of the police, because it was undisputed that, when defendant was arrested, he had moved slowly and haltingly in the direction he had been ordered to go. There being no showing that the videotape contained material or favorable evidence, defendant's right to compulsory process

---

[5] The trial court noted that "the only evidence that is before me is that the tape commences after [defendant] is already in custody * * * [and] there is no showing before me to suggest that it contains any exculpatory material information."

was not violated by applying the media shield law in this case. The trial court did not err when it granted KVAL's motion to quash defendant's subpoena and denied defendant's motion to compel production of the videotape.

Defendant also assigns error to the denial of his motion for judgment of acquittal. His motion was made on the ground that no reasonable factfinder could find either that he had "remained" on the premises or that the police order was lawful. Having reviewed the evidence in the light most favorable to the state, we hold that the trial court did not err in denying defendant's motion. It is no defense to a charge of criminal trespass that defendant intended to leave the area eventually. Nor can defendant transform this into a free speech case by asserting that his purpose for remaining inside the barricaded area was to conduct interviews, and that he was arrested because he had "asked one too many questions" of the police. The evidence shows that the police were authorized to provide security at the Oregon Convention Center during the President's visit. Their request that all members of the public remain outside the police line was made pursuant to that authority. Defendant's status as a member of the media gave him no special right to disobey that request.

Affirmed.