STATE OF NORTH CAROLINA v. WESLEY SHANE THORNE

No. COA04-546

(Filed 20 September 2005)

**1. Constitutional Law— right to confrontation—testimony about lost surveillance videotape—opportunity for cross-examination**

The trial court did not violate defendant's Sixth Amendment right to confront the witnesses against him in a robbery with a firearm case by denying defendant's motion in limine requesting an order prohibiting witnesses from testifying about the contents of a lost surveillance videotape of the bank robbery, because: (1) defendant's cross-examination was neither restricted by the law nor did the trial court limit the scope of such examination; (2) defendant's only limitation in cross-examining the officer was his inability to play the lost videotape to the jury, but defendant had ample opportunity to cross-examine the officer regarding the quality of the videotape, his viewing of the videotape, and his personal knowledge of defendant's gait; and (3) North Carolina's Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. U.S. Const. amend. VI; N.C. Const. art. I, § 23.

**2. Evidence— testimony about contents of lost videotape—identity—failure to show prejudicial error**

The trial court did not abuse its discretion in a robbery with a firearm case by allowing an officer to testify at trial regarding the contents of a lost videotape allegedly in violation of N.C.G.S. § 8C-1, Rules 403 and 701, because: (1) the testimony of the officer that he observed defendant's gait in the past, observed the robber's gait on the videotape several times, and perceived the two gaits to be similar bore on the jury's determination of the identity of the perpetrator; (2) the jurors' inability to view

the lost videotape does not, per se, result in a violation of Rule 403 since defendant does not assert the State destroyed or lost the videotape in bad faith, and thus secondary evidence such as the officer's testimony is expressly permitted under N.C.G.S. § 8C-1, Rule 1004 if otherwise admissible under the Rules of Evidence; and (3) although prejudicial, defendant has made no showing that the prejudice was unfair or had the undue tendency to suggest a decision on an improper basis.

**3. Constitutional Law— effective assistance of counsel—failure to object or move to strike**

Defendant did not receive ineffective assistance of counsel in a robbery with a firearm case by his counsel's failure to object to or move to strike the prior out-of-court statements of two witnesses admitted for corroborative purposes because even without the out-of-court statements, defendant has failed to show that there is a reasonable probability that absent the alleged error the trial result would have been different.

Appeal by defendant from judgment entered 21 November 2003 by Judge Benjamin G. Alford in Onslow County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Joyce S. Rutledge for the State.*

*Paul F. Herzog for defendant-appellant.*

CALABRIA, Judge.

Wesley Shane Thorne ("defendant") appeals a judgment entered on a jury verdict of guilty of robbery with a firearm. We find no error.

The State presented evidence that sometime around 4:00 p.m. on 3 November 1998, defendant and his girlfriend, Maxine Little ("Maxine"), drove defendant's car to the end of a dead end street near the woods behind the Marine Federal Credit Union (the "Credit Union") in Jacksonville, North Carolina to smoke marijuana. Defendant exited the car, opened the trunk, and left for approximately seven minutes. During this time, defendant entered the back entrance of the Credit Union wearing a black top, black pants, a black ski mask, and sunglasses. Defendant was armed with a sawed-off shotgun and was carrying a black pillowcase. He ordered the tellers to fill the pillowcase with money and threatened to harm

the tellers and customers if anyone moved or did anything wrong. Defendant took the money and exited the bank through the same door he entered.

Defendant returned to the car, and Maxine observed he was out of breath and was wearing a black, hooded sweatshirt that was different from the shirt he had been wearing when he exited the car. When defendant later opened the trunk of the car, Maxine noticed a small rifle or shotgun and a black pillowcase with money hanging out of it. Two days after the robbery, defendant paid cash for the balance of the restitution he owed on his probation sentence. The following month, defendant paid $740.94 in cash for new furniture and $600.00 in cash towards the rent on a new apartment.

Members of the Jacksonville Police Department and the State Bureau of Investigation arrived at the Credit Union shortly after the robbery. An audit revealed the total amount stolen during the robbery was $10,884.00. Captain Tim Malfitano ("Captain Malfitano") of the Jacksonville Police Department viewed the Credit Union's surveillance tape of the robbery several times and informed the police detectives that the "characteristic of the [robber's] walk" was similar to that of defendant. During the investigation, Thomas Rafferty of the Onslow County Sheriff's Department also recovered a pair of sunglasses that were on the ground behind the Credit Union, and they were later identified as being similar to sunglasses normally worn by defendant. That night, police obtained defendant's consent to search his bedroom, where they found and seized a black pillowcase. Defendant was not taken into custody and the robbery case was classified inactive. Subsequently, the Jacksonville Police Department lost the surveillance videotape of the robbery.

On 22 May 2000, Detective David Kaderbek ("Detective Kaderbek"), the detective assigned to the case, obtained statements from four separate people who linked defendant to the robbery. The first statement was by Sharon Gardner ("Gardner"), Maxine's mother. She stated that Kristin Elkert ("Elkert") informed her that Maxine was involved in the robbery. The second statement by Elkert revealed that Maxine told her that she and defendant had robbed the Credit Union. Hilton Scott ("Scott") also gave a statement that defendant told him that he obtained his money by robbing a bank. The last statement, given by Maxine, identified defendant as the robber of the Credit Union on 3 November 1998. On 4 August 2000, a warrant was issued for defendant's arrest, and he was indicted for robbery with a dangerous weapon on 11 February 2003.

Prior to trial, defendant made a motion *in limine* to prohibit any witnesses who had viewed the surveillance tape of the robbery from testifying about the contents of the videotape at trial. The trial court denied the motion *in limine* and Captain Malfitano subsequently testified at trial, over defendant's objection, that the gait of defendant was similar to that of the person seen robbing the bank on the surveillance tape. At trial, Elkert and Scott also read into evidence the statements they had previously made. Maxine, pursuant to plea bargain, also testified.

On 21 November 2003, the jury returned a verdict of guilty of robbery with a firearm. The trial court determined defendant's prior record level was a level four and sentenced defendant to a term of 117 to 150 months in the North Carolina Department of Correction. Defendant appeals.

[1] Defendant first assigns error to the trial court's denial of his motion *in limine*, in which he requested an order prohibiting witnesses from testifying about the contents of the lost surveillance videotape of the bank robbery. Defendant's only specific contention properly before this Court is that the denial of the motion *in limine* violated his constitutional right to confront the witnesses against him under the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution.[1] Defendant claims that by allowing Captain Malfitano to testify about the contents of the videotape, the trial court interfered with his right of effective cross-examination because he had no way to test the credibility of the witness. Specifically, defendant argues "[h]e could not show the tape to the jury during cross-examination, and ask the witness specific questions about the basis of the opinion, with the jurors watching both the tape and the witness."

It is well-settled that *de novo* review is ordinarily appropriate in cases where constitutional rights are implicated. *Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001). Under the Confrontation Clause of the Sixth Amendment, a defendant is guaranteed the right to effectively cross-examine a witness,

---

1. Although defendant briefly cites authority regarding his right to present evidence under the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution, he does not argue this right; therefore, pursuant to N.C. R. App. P. 28(b)(6), it is deemed abandoned. We note parenthetically defendant's concession that the videotape was not lost or destroyed in bad faith obviates any due process claim that his right to present evidence under the United States or North Carolina Constitution has been violated. *See Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281 (1988); *State v. Hunt*, 345 N.C. 720, 483 S.E.2d 417 (1997).

which includes the opportunity to show that a witness is biased or that the testimony is exaggerated or unbelievable. *United States v. Abel*, 469 U.S. 45, 50, 83 L. Ed. 2d 450, 456 (1984). The right to effectively cross-examine a witness, however, does not guarantee a defendant a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19 (1985) (*per curiam*). Indeed, the right to confront one's accusers is generally satisfied if defense counsel receives wide latitude at trial to question witnesses. *Fensterer*, 474 U.S. at 22, 88 L. Ed. 2d at 21.

In *Fensterer*, the defendant was convicted, in part, on the testimony of the State's expert witness, who could not recall which scientific test he used to form his opinion. *Id.*, 474 U.S. at 17, 88 L. Ed. 2d at 18. Despite his inability to recall limited defense counsel's efforts to discredit the testimony, the Supreme Court held that there was no Sixth Amendment violation. The Court held that because the scope of defendant's cross-examination was not restricted by the trial court or by law, the defendant had a full "opportunity for effective cross-examination." *Id.*, 474 U.S. at 19-20, 88 L. Ed. 2d at 19.

In *State v. Zinsli*, 156 Or. App. 245, 966 P.2d 1200 (1998), the Oregon Court of Appeals, considered a Confrontation Clause challenge on facts similar to the case at bar. In *Zinsli*, the defendant was driving under the influence of intoxicants and the administered field sobriety tests were videotaped. *Id.*, 156 Or. App. at 247, 966 P.2d at 1201. The videotape was later destroyed inadvertently. *Id.* The trial court granted the defendant's motion to dismiss, finding that the loss of the videotape violated defendant's right to confrontation. *Id.* On appeal, the Oregon Court of Appeals found the Supreme Court's decision in *Fensterer* to be controlling and found no Confrontation Clause violation since the arresting officer would be available to testify at trial and his cross-examination would not be restricted by the trial court. *Id.*, 156 Or. App. at 251, 966 P.2d at 1203.

Similarly, in this case, defendant's cross-examination was neither restricted by the law nor did the trial court limit the scope of such examination. Instead, defendant's only limitation in cross-examining Captain Malfitano was his inability to play the lost videotape to the jury. Nonetheless, defendant had ample opportunity to cross-examine Captain Malfitano regarding the quality of the videotape, his viewing of the videotape, and his personal knowledge of defendant's gait. In fact, defendant concedes in his brief that "defense counsel [had] the

opportunity to question Captain Malfitano about what he saw on the videotape[.]" Accordingly, defendant's confrontation rights under the Sixth Amendment were vindicated, and we find no error.

Article I, Section 23 of the North Carolina Constitution also provides a defendant the right to cross-examine adverse witnesses through the constitutional guarantee of the right of confrontation. N.C. Const. Art. I, § 23. *State v. Watson*, 281 N.C. 221, 229, 188 S.E.2d 289, 294, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972). However, our Supreme Court, in interpreting Article I, Section 23 has followed the United States Supreme Court in holding that, "[North Carolina's] Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. McNeil*, 350 N.C. 657, 676, 518 S.E.2d 486, 498 (1999) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19 (1985) (*per curiam*)). Although our courts have not examined the meaning of "effective" cross-examination when evidence has been lost and is unavailable to the defendant, we find the reasoning set forth in *Fensterer* to be persuasive and applicable. Under these facts, we hold that defendant's right to confrontation under Article I, Section 23 of the North Carolina Constitution has not been violated, and accordingly, we find no error.

**[2]** In defendant's second assignment of error he asserts the trial court committed reversible error in allowing Captain Malfitano to testify at trial regarding the contents of the lost videotape in violation of N.C. Gen. Stat. § 8C-1, Rules 403 and 701 (2003). Specifically, defendant argues that the absence of the videotape failed to allow "the jurors . . . to effectively evaluate the worth, value and credibility of the opinion testimony of the witness[] who made the identification from the surveillance [videotape]." Defendant ostensibly contends that the unavailability of the videotape affects the decision to admit lay opinion testimony concerning its contents and argues that this is "a new sort of hybrid for North Carolina." We disagree.

Lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2003). "[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion." *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000). Captain Malfitano testified that as part of his training as an under-

cover narcotics officer, he studied different mannerisms and characteristics of people and was "trained to notice differences in the actual ways people walk." Furthermore, Malfitano was experienced in watching people both in person and on film and had attended several schools for electronic and technical surveillance. Malfitano testified that he had observed defendant's gait in the past, observed the robber's gait on the videotape several times, and perceived the two gaits to be similar. Such testimony bore on the jury's determination of the identity of the perpetrator. Accordingly, this evidence was not barred by Rule 701, and the trial court did not abuse its discretion in admitting Captain Malfitano's testimony.

Defendant next asserts the trial court erred in balancing the prejudicial effect of the testimony against its probative value. Specifically, defendant argues that the jurors' inability to view the contents of the tape unfairly prejudiced him at trial. We note at the outset that the jurors inability to view the lost videotape does not, *per se*, result in a violation of Rule 403. Indeed, our Rules of Evidence allow for the admissibility of secondary evidence where the original is lost or destroyed. N.C. Gen. Stat. § 8C-1, Rule 1004 (2003). Relevant to the instant case, defendant does not assert the State destroyed or lost the videotape in bad faith; therefore, secondary evidence, such as Captain Malfitano's testimony, is expressly permitted under Rule 1004 if otherwise admissible under the Rules of Evidence.

"[R]elevant [] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2003). "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *State v. Hoffman*, 349 N.C. 167, 184, 505 S.E.2d 80, 91 (1998) (internal quotation and citation omitted). However, " '[u]nfair prejudice,' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (internal quotation mark and citation omitted). Whether to exclude relevant evidence pursuant to Rule 403 is a decision within the trial court's discretion and will remain undisturbed on appeal absent a showing that an abuse of discretion occurred. *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992).

In the instant case, the trial court did not abuse its discretion in balancing the probative value of the detective's testimony against its prejudicial effect. The testimony provided evidence of the identity of

the perpetrator, who was disguised with sunglasses and wore a dark covering over his face. Although prejudicial, defendant has made no showing that the prejudice was unfair or had the undue tendency to suggest a decision on an improper basis. As noted *supra*, the unavailability of the videotape does not make the testimony unfairly prejudicial, as the admission of such testimony is expressly contemplated under the Rules of Evidence. This assignment of error is overruled.

**[3]** In defendant's last assignment of error, he argues that his defense counsel provided ineffective assistance when he failed to object to or move to strike the prior out-of-court statements of Scott and Elkert. The trial court admitted the statements as corroborative of their trial testimony; however, defendant argues on appeal that the statements contained additional or "new" information and discrepancies.

"To successfully assert an ineffective assistance of counsel claim, defendant . . . must show that [(1)] [his] counsel's performance fell below an objective standard of reasonableness [and] . . . [(2)] the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error." *State v. Blakeney*, 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (citations omitted). Even without the out-of-court statements by Scott and Elkert, the evidence presented at trial included the following: (1) testimony by Maxine, defendant's accomplice, that defendant robbed the bank; (2) testimony from witnesses describing the weapon and container used in the robbery corroborating Maxine's testimony that she saw a black pillowcase filled with money and a shotgun in the trunk of defendant's car; (3) Elkert's trial testimony that Maxine told her she and defendant had robbed a bank and hid in the woods; (4) Scott's testimony that when he asked defendant where he had gotten his extra money, defendant responded that the money, "c[a]me from a bank"; (5) testimony from a witness that a dark-colored car was parked at the end of Commerce Road near the woods behind the bank around the time of the robbery that matched Maxine's testimony that she and defendant drove defendant's dark blue car to the end of Commerce Road before the robbery to smoke marijuana; (6) testimony that defendant paid off a number of debts shortly after the robbery and appeared to have access to more money after the robbery; (7) Maxine's testimony that defendant told her, prior to the robbery, how easy it would be to rob the Credit Union; and (8) testimony by several witnesses, including Maxine, that the sunglasses found behind the Credit Union after the robbery matched those normally worn by defendant.

Therefore, even without the out-of-court statements, defendant has failed to show that there is a reasonable probability that absent the alleged error the trial result would have been different. Accordingly, this assignment of error is overruled.

Affirmed.

Judges HUNTER and JACKSON concur.