STATE OF NORTH CAROLINA
v.
JESUS ADAN CRUZ RIOS.
No. COA07-1232
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Alexander McC. Peters, for the State.
Gilda C. Rodriguez, for defendant-appellant.
JACKSON, Judge.
Jesus Adan Cruz Rios ("defendant") appeals his 9 April 2007 conviction for first degree murder. For the reasons stated below, we hold no error.
On 23 March 2002, Jose Luis Alvarez Diaz ("Diaz") attended a child's birthday party at the American Legion hall in Mecklenburg County. While Diaz was sitting at a table laughing at a clown's performance, defendant approached him and asked if Diaz was laughing at him. Diaz said that he was not. Later in the evening, defendant returned with another man, and again asked if Diaz had "a problem with" him. Defendant appeared to want to fight or argue. Eventually, defendant and Diaz went to "take it outside" along with several other individuals. Defendant was wearing "baggy jeans" and a long belt with the number "18" on it.
Once outside, defendant lifted his shirt, took out a gun, and pointed it at Diaz's face. When defendant pulled the trigger, the gun misfired. Defendant then pulled the slider back and pointed the gun at Diaz again. The second time, the gun fired.
Others began shooting, and a struggle ensued. Defendant and his associates eventually "took off running" and three cars  a white van, a black Maxima, and a red Probe  "took off very fast through the parking lot." Diaz died later that morning from a gunshot wound to the head.
On 6 September 2005, defendant was indicted for murder. On 9 April 2007, a jury found defendant guilty of first-degree murder. Defendant was sentenced to a term of life imprisonment in the North Carolina Department of Correction, without the possibility of parole. Defendant gave oral notice of appeal.
Defendant first assigns error to the trial court's denial of his motion to dismiss because the use of witness statements translated by the interviewing officer violated his constitutional right to confront and cross-examine the witnesses against him. We disagree.
When constitutional rights are implicated, this Court ordinarily reviews the matter de novo. State v. Thorne, 173 N.C. App. 393, 396, 618 S.E.2d 790, 793 (2005) (citing Piedmont Triad Airport Auth. v. Urbine, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001), cert. denied, 535 U.S. 971, 152 L. Ed. 2d 381 (2002)). Under the Confrontation Clause of the Sixth Amendment, a defendant is guaranteed the right to effectively cross-examine a witness, which includes the opportunity to show that a witness is biased or that the testimony is exaggerated or unbelievable. The right to effectively cross-examine a witness, however, does not guarantee a defendant a cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Indeed, the right to confront one's accusers is generally satisfied if defense counsel receives wide latitude at trial to question witnesses.
Id. at 396-97, 618 S.E.2d at 793-94 (internal citations and quotation marks omitted) (emphasis added).
The witness statements at issue were given by Spanish-speaking witnesses to a Spanish-speaking officer. The officer had scored a four and a half on a five-point scale of proficiency in Spanish to qualify for the Charlotte-Mecklenburg Secondary Language Incentive Program. After the witnesses gave their verbal statements to the officer, the officer reduced the statements to writing  in English  then read them back to the witnesses in Spanish. The witnesses then signed the statements.
Defendant argues that the fact that the interpreter also was an investigator, casts doubt upon the accuracy of the statements, the impartiality of the interpreter, and the completeness of the statements. However, defendant was free to challenge both the accuracy and completeness of the statements, as well as the impartiality of the officer through a vigorous cross-examination of the testifying officer as well as the witnesses themselves.
Defendant also suggests that because two witnesses testified at trial to events that were not reflected in their statements to police, the statements are suspect. However, the witnesses were asked about the omission and both testified that they did not recall telling the officer about those events. This makes clear that defendant had ample opportunity to cross-examine the witnesses about their statements. Further, defendant could have taken the witnesses through their statements during the trial and verified that each assertion was complete and accurate. Defendant was given ample opportunity to show that the recorded statements were inaccurate or incomplete and that the officer was not impartial. Therefore, this assignment of error is overruled.
Defendant next assigns error to the trial court's admission of evidence of prior bad acts pursuant to Rule of Evidence 404(b). He argues that the incident in question was too dissimilar from the underlying case to be relevant and that the prejudicial effect of the evidence was greater than the probative value of the evidence. We disagree.
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007).
It is within the sound discretion of the trial court to determine whether to exclude evidence pursuant to Rule 404(b). State v. Aldridge, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635, disc. rev. denied and appeal dismissed, 353 N.C. 269, 546 S.E.2d 114 (2000) (citing State v. Anderson, 350 N.C. 152, 175, 513 S.E.2d 296, 310, cert. denied, 528 U.S. 973, 145 L. Ed. 2d 326 (1999)). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." State v. Riddick, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (citingState v. Hayes, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985); White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).
Victor Manuel Adame Juarez ("Juarez") testified to an incident that had occurred two weeks prior to the incident involving Diaz. Juarez and a friend had arrived at a restaurant at approximately 10:00 p.m. and were seated at a table when a man from a nearby table approached them and "slammed" his beer down on their table. Three other men from the nearby table then approached, defendant among them, and told Juarez to "go outside." Although Juarez did not go outside, the others did.
Defendant was wearing loose clothing and a long blue belt with the number "18" on it. Defendant acted like he wanted to pull a weapon from the front of his pants. Juarez then heard gunshots and his car alarm go off. Juarez saw defendant and the other men run to their car and leave; it was a red Ford Probe. When Juarez inspected his car, he saw that it had several bullet holes in it.
The trial court admitted this evidence for the limited purposes of showing identity, malice, and method of operation, and instructed the jury accordingly. In both the prior incident and the incident with Diaz, defendant wore loose clothing and a long belt with the number "18" on it. In both incidents, defendant and others approached a table in a public place where people were eating and attempted to start an altercation. In both incidents, defendant and others suggested they "go outside." In the Juarez incident, defendant appeared to have a gun in his waistband; while in the Diaz incident, defendant did have a gun in his waistband. Shots were fired in both incidents  at Juarez's car and at Diaz's head. A red Ford Probe left the scene in both incidents. Based upon these similarities, there was no abuse of discretion in admitting the evidence for the limited purposes of showing identity, malice, and method of operation. Therefore, the assignments of error encompassed by this argument are overruled.
Defendant next assigns error to the trial court's denial of his motion to dismiss the charge of first degree murder. He argues there was insufficient evidence that he was the perpetrator of the crime. We disagree.
The question upon a motion to dismiss in a criminal trial "is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "If so, the motion is properly denied." Id. (citations omitted). "Substantial evidence" can be defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.
Powell, 299 N.C. at 99, 261 S.E.2d at 117 (citations omitted). The denial of a motion to dismiss for insufficient evidence is a question of law that an appellate court reviews de novo. State v. Bagley, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted).
Defendant argues that (1) there was no physical evidence linking him to the crime; (2) the eyewitness testimony was inconsistent and unreliable; and (3) there was no evidence that defendant had ever admitted to anyone that he had shot Diaz. However, defendant's argument ignores the appropriate standard of review. The evidence is to be viewed in the light most favorable to the State.
Viewed in that light, the State presented two eyewitnesses who testified that they saw defendant point a gun at Diaz's head and pull the trigger twice  the first misfiring and the second firing. Diaz died of a gunshot wound to the head. This is sufficient evidence  evidence that a reasonable mind might accept as adequate to support the conclusion that defendant shot and killed Diaz. The fact that this evidence may be in question goes to the weight of the evidence, which is for the jury to decide, not the court. See State v. Harris, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007) ("[T]he question for the trial court is not one of weight, but of the sufficiency of the evidence." (citations omitted)).
Because there was sufficient evidence that defendant was the perpetrator of the crime charged, this assignment of error is overruled.
Finally, defendant assigns error to the trial court's use of an instruction on flight as evidence of guilt. He argues that the instruction was not supported by the evidence. We disagree.
The choice of jury instructions "is a matter within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." State v. Nicholson, 355 N.C. 1, 66, 558 S.E.2d 109, 152, cert. denied, 537 U.S. 845, 154 L. Ed. 2d 71 (2002) (citing State v. Steen, 352 N.C. 227, 249-50, 536 S.E.2d 1, 15 (2000), cert. denied, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001)). A jury instruction on flight is properly given when "`some evidence in the record reasonably support[s] the theory that defendant fled after commission of the crime charged.'" State v. Levan, 326 N.C. 155, 164-65, 388 S.E.2d 429, 433-34 (1990) (quoting State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). "The relevant inquiry is whether the evidence shows that defendant left the scene of the crime and took steps to avoid apprehension." State v. Grooms, 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000), cert. denied, 534 U.S. 838, 151 L. Ed. 2d 54 (2001) (citing Levan 326 N.C. at 165, 388 S.E.2d at 434). When the State requests the instruction, the evidence is viewed in the light most favorable to the State. See id. ("These facts,taken in the light mostfavorable to the State, permit an inference that defendant had a consciousness of guilt and took steps, albeit unsuccessful, to avoid apprehension." (Emphasis added)).
Defendant argues that there was insufficient evidence of his attempts to avoid apprehension to support a jury instruction on flight. However, the evidence must be viewed in the light most favorable to the State.
On 24 March 2002, a warrant was issued for defendant's arrest. That same day, an all points bulletin was issued, to let officers know of the outstanding warrant for a serious offense. "Wanted" posters  in both English and Spanish  also were posted in the area where police thought defendant could be. The wanted poster was posted in the Spanish newspapers in the Charlotte area. The local media was notified that defendant was wanted for murder.
Shortly thereafter, defendant moved to Mexico for a period of two years. Upon his return to the United States, defendant moved to Baltimore, Maryland, where he lived until an anonymous tip led police to him there. When finally apprehended, defendant said, "I have to pay for what happened and accept responsibility for what I did."
From these facts, the jury could draw an inference that defendant "had a consciousness of guilt and took steps . . . to avoid apprehension." Id. Therefore, this assignment of error is overruled.
We note that defendant stated twelve assignments of error in the record on appeal but has brought only six forward in his brief. "Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." N.C.R. App. P. 28(a) (2007). Therefore, pursuant to Rule 28 of the North Carolina Rules of Appellate Procedure, the six assignments of error not brought forward are deemed abandoned.
Having found no merit in defendant's assignments of error, his conviction of first-degree murder is without error.
No error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).