IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-500

Filed 7 May 2025

New Hanover County, Nos. 22 CRS 52509-640

STATE OF NORTH CAROLINA

v.

SHARI NICOLE BROWN, Defendant.

Appeal by Defendant from judgment entered 5 December 2022 by Judge Susan E. Bray in New Hanover County Superior Court. Heard in the Court of Appeals 25 February 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Stacey A. Phipps, for the State.*

> *Manning Law Firm, PLLC, by Attorney Clarke S. Martin for the Defendant–Appellant.*

MURRY, Judge.

Shari N. Brown (Defendant) appeals the trial court's treatment of the State's closing argument to her trial. She argues the trial court erred by (1) overruling certain objections to the State's closing argument, (2) permitting an alleged comment on Defendant's decision to not testify, and (3) "failing to intervene *ex mero motu* in response to" "flagrantly impermissible" remarks by the State. For the following reasons, we disagree with Defendant and find no error in the trial, the jury verdicts, or judgments entered thereon and thus affirm the trial court.

## I.    Background

In 2021, Hannah Parker was in a brief relationship with her co-worker, Hykeem Gaymon (nicknamed "Quick"). While seeing Parker, Gaymon was also romantically involved with Defendant, with whom he shares children. By the end of 2021, Parker and Gaymon had ended their relationship.

Around 11:30 PM on 1 April 2022, Deputy Sean Flynn conducted a traffic stop on Defendant for a missing headlight. Gaymon was a front-seat passenger in Defendant's vehicle. Upon running their information, Deputy Flynn learned that Defendant had filed a domestic violence protective order against Gaymon and arrested him for violating it. Deputy Flynn testified that Gaymon was in the custody of the New Hanover County Sheriff's Department (the Department) from about 11:50 PM on 1 April 2022 until "at least Monday" on 4 April 2022.

As of April 2022, Parker resided at 808 Nature Park, Wilmington, North Carolina. Prior to April 2022, Defendant had already trespassed on Parker's Wilmington residence at several points to slash her tires and dump out her flowerpots, all of which Parker recorded with security video later played at trial. On 2 April 2022, after spending the night away from her apartment, Parker woke up to nine missed calls from an unknown number. She then started to receive threatening text messages from another unknown number, purported to be Gaymon's phone, but later identified as Defendant on Gaymon's phone while he was in police custody from his arrest the night before. After Defendant sent Parker a picture of Parker's diary

from this unknown number, Parker called the police upon realizing that someone had been inside her apartment without her knowledge.

Arriving at the scene, Deputy Luke Garmon observed an unlocked exterior door and an unlocked window with a damaged windowpane covered in unidentified fingerprints. The State proffered at trial the Department's in-house Latent Fingerprint Examiner, Lukas Feldbusch, as an expert witness to testify that the prints matched those of Defendant. CSI Detective Jonathan Vickers testified that Parker's residence was "very much destroyed" as "[a]nything that had a place at one time was moved" and "thrown on the floor." Detective Vickers observed the message, "Call Quick," scribbled on Parker's walls in large, black letters. Parker identified several personal items as missing, including her diary, two televisions, a MacBook Pro laptop, a 9-mm handgun, a vacuum cleaner, a microwave, and a camera. Using a pre-installed geolocator, Parker located her laptop approximately one mile from her apartment at 708 North 30th Street, Wilmington, North Carolina, the same neighborhood where Parker had once dropped off Gaymon when they were seeing each other in 2021.

While law enforcement monitored, Parker solicited additional messages from one of Defendant's unknown numbers. Detective Bailey Fex-Overton instructed Parker to call the number, which Defendant answered to harass her. After Detective Fex-Overton instructed Parker to end the call, Defendant called back and continued

communicating threats. The detective recorded both calls, which the State played as evidence at trial.

One week later, Deputy Sergeant Nicholas Lee questioned Defendant about the incident at Parker's apartment; she revealed multiple confrontations with women whom Gaymon had allegedly cheated on her with—including Parker. Defendant admitted to "banging on windows[,] . . . knocking . . . on doors," and "m[ay]be" having a photo of Parker's diary on her phone. She also admitted to visiting Parker's apartment on 1 April 2022 to confront Parker about her relationship with Gaymon. The State also played a recording of this interview as evidence at trial.

On 5 December 2022, a grand jury indicted Defendant for felony breaking and entering, felony larceny, misdemeanor harassing phone call, misdemeanor communicating threats, and possessing a firearm after a previous felony conviction. This case came on for hearing in Superior Court, New Hanover County on 15 November 2023. Defendant did not testify or offer any evidence in her own defense. The State introduced extensive photographic, audio, and video evidence via 54 exhibits. On appeal, Defendant argues that the State's closing argument contains multiple reversible errors. Two statements Defendant challenges were objected to at trial. Defendant argues that the trial court abused its discretion in overruling these objections. In those statements, the State argued that:

(1)　[Defendant] does call back. She's not done. She's not done talking. She's not done talking. She's going to still say what she would; and she still would today, probably.

(2)     You are going to be advised as to you can find [Defendant] guilty of misdemeanor larceny. . . . And that means she stole property not after-but not after a breaking and entering and the property she stole was not over $1,000. I don't think the evidence supports that whatsoever. She either went—it's either she did it or didn't. . . . She did it there or she didn't.

(Challenges #1 & #2.) Of the eight statements that Defendant now challenges

for the first time on appeal, the State argued that:

(3)     [E]very single person has the right to plead not guilty and ask for a jury trial, no matter what the evidence is against them. I say this, because I don't want you to read into anything, like, "Well, you know, it's a trial; maybe that means something."

(4)     "We just fight, like usual that night," may be the strongest evidence because you know who [Defendant] is now.

(5)     That shows you who [Defendant] is. That shows you can't believe a single thing she says. Her rage and her fury undermine her. She's unable to control it. And she will do anything and make up anything to get away with anything. Crazy.

(6)     Remember in opening . . . [that] Mr. Hosford . . . nam[ed] numerous facts that actually never were presented into evidence because they're not true and they're not here.

(7)     [S]moke and mirrors is what this defense is. . . . They don't have a defense.

(8)     [T]his right here . . . shows that [Parker]'s telling the truth.

(9)     I feel the evidence is obvious. I think it's so strong; but, you know, she's not there. Nothing she said was true, other than the most true thing in the world, the one thing she said that was true: 'I'm angry and I'm getting angry.'" We all agree. We – we believe her, don't we? In that interview when she says, "I'm angry, I'm getting angry, I think we all believed you're angry."

(10)    Smoke and mirrors. That's all this is. That's all they have is smoke and mirrors because the evidence is just that strong. It is what it is. She did what she did, and there's no question as to it.

(Challenges #3–#10.) The State also pointed out that it "has the burden to

prove that . . . [D]efendant is guilty of every charge beyond a reasonable doubt," that

she "has the right to not testify," that the jury is "not to consider that" choice, and that she "has just as much [of a] right to put on evidence." (Challenge #11.) On 15 November 2023, the jury found Defendant guilty of felony breaking and entering, making a harassing phone call, and communicating threats but not guilty of felony larceny or firearm possession. The trial court found mitigating factors[1] and sentenced Defendant to 12 – 24 months in custody of the North Carolina Department of Adult Corrections and 24 months of supervised probation to begin at the expiration of the active sentence. Defendant gave oral notice of appeal in open court.

## II.     Jurisdiction

Defendant appeals as a matter of right under N.C.G.S. §§ 7A-27(b) and 15A-1444(a) from final judgments entered in Superior Court, New Hanover County.

## III.     Analysis

Among her preserved arguments regarding the State's closing argument, Defendant contends that the trial court erred by (1) overruling her counsel's objection to one portion of the argument, (2) not intervening *ex mero motu* to correct another portion, and (3) overruling another objection to that prosecutor's alleged invocation of her constitutional right to not testify. Determining the proper standard of review for each issue depends on whether opposing counsel contemporaneously objected to the statement at trial. *See State v. Hembree*, 368 N.C. 2, 18–19 (2005). If so, our

---

[1] The trial court found Defendant to be a Prior Record Level IV with 19 prior-sentencing points.

appellate courts review only for a trial court's abuse of discretion; otherwise, they look for "gross impropriety." *Id.* We review *de novo* allegations of constitutional error, *State v. Thorne*, 173 N.C. App. 393, 396 (2005), which the State must show as harmless "beyond a reasonable doubt," N.C.G.S. § 15A-1443(b) (2023). For the reasons discussed below, this Court holds that the trial court did not reversibly err under any of Defendant's three arguments.

North Carolina has long recognized the privilege against self-incrimination for its criminal defendants at trial. *See* An Act to Permit Defendants in Criminal Cases to Testify in Their Own Behalf, ch. 110, sec. 2, 1881 N.C. Sess. Laws 51, 167 (codified as amended at N.C.G.S. § 8-54 (2023)); *see also State v. Randolph*, 312 N.C. 198, 205–06 (1984) (acknowledging statutory privilege "[w]ell before *Griffin*" v. *California*, 380 U.S. 609 (1965) decision that constitutionally incorporated it to States). Reinforcing this privilege, § 15A-1230 forbids the State from giving a closing argument to a jury that "abus[es]" a defendant or touches on "matters outside the record." N.C.G.S. § 15A-1230(a). But our appellate courts do not "impose a perfection requirement on the attorneys and trial courts of this State, ever mindful that parties are entitled to a fair trial but not a perfect one." *State v. Parker*, 377 N.C. 466, 472 (2021) (quotation omitted). Despite this small allowance, the prosecutor "owe honesty and fervor to the State and fairness to the defendant in the performance of their duties." S*tate v. Locklear*, 294 N.C. 210, 217 (1978); *see Berger v. United States*, 295 U.S. 78 (1935) (While a prosecutor "may strike hard blows, [she] is not at liberty to strike foul ones.

It is as much [her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

Because a "lawyer's function during closing argument is to provide the jury with a summation of the evidence," she must limit her colloquy to the "relevant legal issues," *State v. Jones*, 355 N.C. 117, 127 (2002), which exclude "incompetent and prejudicial matters," *State v. Rogers*, 355 N.C. 420, 462 (2002). At closing, a prosecutor "may not become abusive, interject . . . personal experiences, [or] express . . . personal belief[s] as to . . . [either] the evidence or . . . guilt of . . . the defendant." N.C.G.S. § 15A-1230. We grant attorneys "wide latitude in their closing arguments to the jury, with the State being entitled to argue to the jury the law, the facts in evidence[,] and all reasonable inferences drawn therefrom." *State v. Fletcher*, 370 N.C. 313, 319 (2017). But we confer to the trial court "the duty . . . to interfere" when an attorney's remarks "are calculated to mislead or prejudice the jury." *State v. Miller*, 271 N.C. 646, 659 (1967).

## A. Abuse of Discretion

First, Defendant claims that the trial court erred in overruling her counsel's objections to portions of the State's closing argument, *i.e.*, Challenges #1 and #2. We disagree. As noted above, this Court reviews an alleged "failure to sustain a defendant's objection . . . made during the State's closing argument" only "for abuse of discretion" by the trial court. *Fletcher*, 370 N.C. at 320. That determination requires a "two-part analysis," *State v. Copley*, 374 N.C. 224, 228 (2022), of whether

"the remarks were improper" and "of such a magnitude that their inclusion" prejudiced the defendant, *Jones*, 355 N.C. at 131.

A statement is improper if "calculated to lead the jury astray." *Id.*; *see State v. Taylor*, 289 N.C. 223, 227 (1976). Impropriety may "include statements of personal opinion, personal conclusions, name-calling, and references to events and circumstances outside the evidence." *Parker*, 377 N.C. at 473 (quoting *Jones*, 355 N.C. at 131). The improper statement must also prejudice the defendant, *see Jones*, 355 N.C. at 134, which requires her to show a "reasonable possibility" that "the jury would have acquitted" her absent the challenged argument, *State v. Ratliff*, 341 N.C. 610, 617 (1995) (citing N.C.G.S. § 15A-1443(a)).

This Court "assess[es] the likely impact of any improper argument in the context of the entire closing," *State v. Thompson*, 359 N.C. 77, 110 (2004), which includes the factual weight of "the evidence presented at trial" and the legal soundness of "the instructions to the jury," *State v. Goins*, 377 N.C. 474, 479 (2021); *see Jones*, 355 N.C. at 134 ("Improper argument at the guilt–innocence phase . . . may not be prejudicial where the evidence of defendant's guilt is virtually uncontested."); *State v. Murillo*, 349 N.C. 573, 606 (1998) ("[E]ven assuming *arguendo* that this portion of the argument was improper, it was not prejudicial to defendant in light of the substantial evidence of his guilt.").

Presuming any prosecutorial impropriety here, we apply the dispositive prejudice standard to the portions of the State's closing argument where the trial

court overruled defense counsel's objections. Specifically, Defendant objected to the prosecutor's closing assertion that she "still would" "threaten[ ]" Parker "today, probably." She also objected to an alleged invocation of "what the prosecutor thinks" and "feels about the evidence." Taking these statements "in context and in light of the overall factual circumstances to which they refer," *Goins*, 377 N.C. at 479, we find no "reasonable possibility" that "the jury would have acquitted defendant [had] the prosecutor's remarks . . . been excluded," *Copley*, 374 N.C. at 231.

The State presented over 50 evidentiary exhibits at trial tending to show the guilt of Defendant, such as her fingerprints along Parker's broken window, a video of her admitting to being at Parker's apartment on the night of the incident, and recordings of her threatening Parker from the unknown number. The State adduced evidence so "substantial" that, even "[pre]suming . . . the argument was improper," the State's remarks would not have "prejudic[ed] . . . [D]efendant." *Murillo*, 349 N.C. at 606. Thus, this Court holds that the trial court did not abuse its discretion in overruling Defendant's counsel's objections to Challenges #1 and #2 of the State's closing argument.

## B. Gross Impropriety

Next, Defendant argues that the trial court erred by "failing to intervene *ex mero motu* in response" to the State's "flagrantly impermissible" remarks in closing, *i.e.*, Challenges #3 through #10. We disagree. A defendant's failure to object to an alleged error at trial ordinarily prevents her from raising that same issue on appeal.

- 10 -

*See State v. Jones*, 317 N.C. 487, 499 (1986) ("Ordinarily, objection to the prosecutor's jury argument must be made prior to the verdict . . . for the alleged impropriety to be reversible on appeal."). Our appellate courts nonetheless recognize a "narrow exception . . . for statements during closing argument so grossly improper" that the trial court abuses its discretion per se by not "interven[ing] on its own initiative." *State v. Tart*, 372 N.C. 73, 81 (2019). Our Supreme Court cautions against reviewing the trial court's "exercise of discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury." *State v. Covington*, 290 N.C. 313, 328 (1976). "Absent extreme or gross impropriety in an argument, a judge should not be thrust into the role of an advocate . . . when counsel is silent." *Parker*, 377 N.C. at 474.

Gross impropriety is an "exceedingly high bar" surmountable "only when the prosecutor's statements went so far beyond the parameters of propriety that the trial court" *must* "intervene to protect the rights of the parties and the sanctity of the proceedings." *State v. Reber*, 386 N.C. 153, 163 (2024). A defendant must demonstrate "comments so infected . . . with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23 (1998); *see State v. Hipps*, 348 N.C. 377, 411 (1998) ("The impropriety of the argument must be gross indeed . . . for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.").

Here, Defendant did not object to Challenges #3–#10 at trial, thus limiting us to an assessment of gross impropriety. Defendant argues these statements fell "so far beyond the parameters of propriety" that the trial court should have intervened *ex mero motu*. *Reber*, 386 N.C. at 163. We disagree and hold that these comments did not "so overreach[ ] as to shift the focus of the jury from its fact-finding function to . . . its own personal prejudices." *State v. Duke*, 360 N.C. 110, 130 (2005). *Contra, e.g.*, *State v. Smith*, 279 N.C. 163, 165–67 (1971) (reversing defendant's conviction because the State "inflammator[il]y and prejudicial[ly]" described him as "lower than the bone belly of a cur dog").

Our appellate courts have upheld multiple closing arguments with similar language to that challenged on appeal here. *E.g.*, *Duke*, 360 N.C. at 128 (holding as not "grossly improper" prosecutor's labeling of defendant as "vicious and selfish"); *Miller*, 271 N.C. at 659 (permitting attorney to "argue to the jury that [it] should not believe a witness" but forbidding him from "call[ing] [witness] a liar"); *State v. Figueroa*, 291 N.C. App. 610, 616 (a prosecutorial assertion of "who [defendant] is" was not prejudicial because it "comprised only a few lines of the prosecutor's eighteen-page closing argument, as transcribed, and was not so grossly improper that it warranted judicial intervention"); *State v. Earley*, No. COA24-386, slip op. at 18–19 (N.C. Ct. App. Mar. 19, 2025) (holding as not "grossly improper" prosecutor's description of self-defense claim as "smoke and mirror[s]").

As discussed above, the State's evidence against Defendant consisted of dozens of evidentiary exhibits, a video of her admitting to being at Parker's apartment on the night of the incident, multiple eyewitnesses to Defendant's harassing phone calls, and expert testimony identifying her fingerprints at the crime scene. In light of the "exceedingly high bar" set by this extensive evidence and the "copious objections made" to it throughout the trial, *Reber*, 386 N.C. at 166, Defendant cannot show how these statements so prejudiced her defense as to have "rendered the conviction fundamentally unfair," *Davis*, 349 N.C. at 23. Thus, this Court holds that the trial court did not prejudicially err by declining to intervene *ex mero motu* in response to Challenges #3 through #10.

### C. De Novo

Lastly, Defendant argues that the trial court violated her constitutional privilege against self-incrimination by overruling defense counsel's objection to the State's "improper[ ] comment on [her] decision not to testify," *i.e.*, Challenge #11. After reviewing *de novo* this claim of constitutional error, we disagree here as well. *Thorne*, 173 N.C. App. at 396. The State violates a defendant's constitutional right to remain silent and to avoid self-incrimination when directly commenting on either decision to do so. *See* N.C. Const. art. I, § 23; *State v. Randolph*, 312 N.C. 198, 305 (1984) (citing *Griffin v. California*, 380 U.S. 609 (1965); then citing N.C.G.S. § 8-54 (1983)). Likewise, the North Carolina Constitution states that a criminal defendant cannot "be compelled to give self-incriminating evidence." N.C. Gen. Stat. § 8-54

(2023) (No person "charged with the commission of a criminal offense" shall be "compel[ed] to answer any question tending to criminate himself."). Accordingly, making "[a]ny direct reference to a defendant's failure to testify is error . . . [that] requires curative measures . . . by the trial court," *State v. Reid*, 334 N.C. 551, 554 (1993), because "extended reference" to them "would nullify the policy that failure to testify should not create a presumption against the defendant," *Randolph*, 312 N.C. at 205–06. But this policy choice does not prevent the prosecutor from "comment[ing] on a defendant's failure to produce witnesses or exculpatory evidence." *Reid*, 334 N.C. at 555. Although the State cannot make the defendant's failure to testify "the subject of comment or consideration," the jury "may consider the fact that" its larger case against her "is uncontradicted . . . or unrebutted." *State v. Bryant*, 236 N.C. 745, 747 (1953).

Here, while the State adduced extensive evidence tending to show Defendant's guilt, Defendant presented none in response and was not required to do so. The State did not comment on Defendant's failure to testify but did "comment on . . . [D]efendant's failure to produce" Gaymon as a witness who could have "contradict[ed] or refute[d] evidence presented by the State." *Reid*, 334 N.C. at 555. The jury could not have considered Defendant's silence but could have considered that Defendant did not contradict the sheer weight of evidence with favorable evidence or testimony, *e.g.*, that of Gaymon. *Cf. State v. Barden*, 356 N.C. 316, 355 (2022) (holding that prosecutor merely sought "to demonstrate to the jury that defense counsel's argument

. . . could not explain" State's evidence). Because the State here did not improperly comment on Defendant's privilege against self-incrimination, this Court holds that the trial court did not prejudicially err by overruling defense counsel's objection to Challenge #11.

## IV.   Conclusion

For the reasons above, this Court holds the trial court did not err in overruling defense counsel's objections to Challenges #1 and #2. Similarly, this Court holds that the trial court did not prejudicially err by failing to intervene *ex mero motu* to Challenges #3 through #10 or by overruling defense counsel's objection to Challenge #11.


NO ERROR.

Judges TYSON and WOOD concur.