Argued and submitted April 30, reversed and remanded with instructions September 30, petition for review denied December 15, 1998 (328 Or 194)

# STATE OF OREGON,
*Appellant,*

*v.*

# MARK STEVEN ZINSLI,
*Respondent.*

## (95-7159; CA A97060)

966 P2d 1200

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Pilar C. French, Assistant Attorney General.

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In this driving under the influence of intoxicants (DUII) case, the state appeals from a pretrial order of dismissal. ORS 138.060(1). Defendant's motion to dismiss the case was based on the state's loss of a videotape of defendant's performance of field sobriety tests (FSTs), which defendant claimed was both material and favorable to his defense. We reverse and remand.

The facts are taken from the arresting officer's testimony at the hearing on defendant's motion to dismiss and from the officer's incident report, which defendant introduced as an exhibit at the hearing. The facts are undisputed except with respect to certain incriminating statements made by defendant. During the late evening hours of September 9, 1995, defendant and his wife parked in a public parking area next to Highway 101 along Rockaway Beach. As they were leaving, defendant backed up the car rapidly, then abruptly changed directions, causing his back tires to spin in the gravel of the parking area. The spinning tires shot gravel and dirt into the air, some of which landed on Officer Murray's patrol vehicle, which was parked nearby. Murray then turned on his overhead lights and stopped defendant.

Defendant got out of his car and met Murray as he approached. Murray asked defendant for his driver's license, proof of insurance and vehicle registration. Defendant could not produce any of those documents. During their conversation, Murray noticed that defendant's breath smelled "moderate[ly]" of alcohol, prompting him to ask defendant if he had been drinking. Defendant replied: "I would rather not say."

Murray returned to his patrol car to check the status of defendant's license. While checking defendant's driving status, Murray turned on his in-car video camera and told defendant that their conversation was being recorded. Defendant said that he would not say or do anything further. However, after Murray requested that defendant perform FSTs, defendant reluctantly agreed, stating that he "had to."

Murray first asked defendant about any injuries that might affect his performance on the tests. Defendant

told him that he had had three back surgeries and numbness in his legs. Defendant then performed five FSTs—the alphabet test, the counting test, the finger-to-nose test, the heel-to-toe test and the finger count test. Murray reported that defendant performed "satisfactorily" on the alphabet and finger count tests, "fair" on the finger-to-nose test, "satisfactorily" on the forward counting portion of the counting test, missed one number on the backward part and was unable to perform the heel-to-toe test. Also, according to Murray, when defendant made mistakes during the counting and the heel-to-toe tests, he commented each time that "you got me on that one."

Murray further reported that after completing the tests, defendant confided: "I'll admit I've had a couple of beers off the record, you haven't ridden [*sic*] me my rights, but I'm not hammered enough." Murray then told defendant that he was "hammered enough" that he should not be driving. Defendant replied: "Well, I really don't want to say, you know what I mean. Person to person, you're probably right, my wife should be driving. And we were arguing and I did hammer the clutch a touch * * *." Murray then arrested defendant, turned the video camera off and took him to the county jail where defendant agreed to take an Intoxilyzer test. The test results indicated that defendant had a blood-alcohol content of .118.

Later, defendant petitioned the trial court to enter the DUII diversion program. The court granted that petition, subsequently revoking it after defendant failed to complete his alcohol treatment program. During the time between defendant's arrest and the revocation of his diversion, the state lost the videotape.

At the hearing on the motion to dismiss, Murray testified that, in preparing his written report, he used the videotape to formulate his descriptions of defendant's performance of the FSTs and to obtain direct quotations of statements made by defendant during their encounter. Defendant also testified at the hearing, claiming that he did not make any statements before his arrest. The court determined that the facts contained in Murray's report and as outlined in his testimony were accurate, except "those things that [we]re

* * * in conflict with defendant's testimony." In granting defendant's motion to dismiss, the trial court based its decision on the Confrontation Clause in Article I, section 11, of the Oregon Constitution, and on the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1] The state assigns error to the court's order of dismissal.

Preliminarily, we note that both defendant and the state agree that the destruction of the videotape was inadvertent. In the state's only assignment of error, it argues that, in losing the videotape, "the state did not violate defendant's [constitutional] rights to confrontation, compulsory process, or due process." The state also argues that "even if defendant was in some way prejudiced, the court abused its discretion in concluding that dismissal was the only remedy available."

■ Generally, we must decide questions of statutory law before we may decide constitutional issues. *State v. Esplin*, 314 Or 296, 300, 839 P2d 211 (1992). Defendant argued at the hearing on his motion to dismiss that the state, in losing the videotape, failed to comply with the discovery rule in ORS 135.815. However, the trial court resolved that issue in the state's favor, and defendant does not cross assign error to, or in any manner seek review of, that determination. There is, thus, no statutory issue before us, and we turn directly to the constitutional questions.

■■ In determining whether a constitutional right of defendant was violated, we are bound by the trial court's findings of fact so long as they are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421

---

[1] As to defendant's due process rights, we note first that the Oregon Constitution does not contain a due process provision. *See State v. Wagner*, 305 Or 115, 145-46, 752 P2d 1136 (1988), *cert granted and vacated on other grounds* 492 US 914 (1989) (refusing to construe Article I, section 10, of the Oregon Constitution as a due process clause). In an effort to limit its analysis to state law, the trial court based its decision on *State v. Smith*, 42 Or App 543, 600 P2d 949 (1979), and *State v. Hockings*, 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978), without referring specifically to the Fourteenth Amendment to the United States Constitution. In both *Smith* and *Hockings*, however, the defendants relied on *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), in challenging the constitutionality of the state's inadvertent destruction of evidence. *Brady* involved a due process claim under the Fourteenth Amendment to the United States Constitution and was the basis for our decisions in *Smith* and *Hockings*. Thus, in relying on *Smith* and *Hockings*, the trial court essentially based its decision on defendant's federal due process rights.

(1993). We must decide whether the trial court correctly applied legal principles to those facts, *id.*, first determining the claims under the Oregon Constitution before considering the federal constitutional questions. *Esplin*, 314 Or at 300.

The state first contends that its loss of the videotape did not violate defendant's right to confrontation or compulsory process under either Article I, section 11, of the Oregon Constitution,[2] or the Sixth Amendment to the United States Constitution.[3] The state's argument as to defendant's right to confrontation is focused on the right to effective cross-examination.[4] Specifically, the state argues that "defendant's opportunity to [effectively] cross-examine [Murray] was [not violated]" because the lost videotape only "denied [defendant] one *method* of cross-examination." (Emphasis in original.) Defendant counters, arguing that he cannot effectively cross-examine Murray because the lost videotape is "the most important method of cross-examination available to [him]." For the reasons that follow, we agree with the state.

In determining whether a defendant's confrontation rights have been violated under the Oregon Constitution, the Oregon Supreme Court, in cases involving the admission of hearsay statements as substantive evidence, has incorporated the reasoning of the United States Supreme Court into

---

[2] Article I, section 11, of the Oregon Constitution, provides:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

[3] The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor[.]"

The Confrontation Clause of the Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas*, 380 US 400, 403-06, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

[4] In *State v. Herrera*, 286 Or 349, 353-54, 594 P2d 823 (1979), the Supreme Court noted that the Confrontation Clause protects two interests: The interest to meet the adverse witness face-to-face "to demonstrate to the jury the witness' demeanor" and the interest to cross-examine effectively that witness to "test his sincerity, memory, ability to perceive and relate, and the factual basis of his statement." Here, defendant and the state agree that the issue focuses on defendant's right to effective cross-examination because there is no dispute that Murray would be available to testify at trial.

the state constitutional analysis. *See State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985) (so stating as to questions of unavailability and reliability). Neither the Oregon Supreme Court nor this court, however, has had occasion to extend explicitly the reasoning of the Court to the analysis of a defendant's right to effective cross-examination. That occasion is now before us, and we conclude that it is reasonable here similarly to adopt the current reasoning of the United States Supreme Court.

In *Delaware v. Fensterer*, 474 US 15, 106 S Ct 292, 88 L Ed 2d 15 (1985), the defendant argued that, because the state's expert could not recall which one of three possible scientific bases he had relied on in forming his opinion, the defendant could not adequately discredit the expert, thus denying his right to cross-examine effectively the state's expert. *Id.* at 17. The Court disagreed, holding that, although the defendant's cross-examination was not effective in the way he wished, because the scope of defendant's cross-examination was not restricted by the trial court or by law, the defendant had a full *"opportunity* for effective cross-examination * * *[,]" which is all that the Confrontation Clause requires. *Id.* at 19-20.

■        Similarly, this case does not involve a restriction imposed by law or by the trial court on the scope of defendant's cross-examination. Rather, defendant here, like the defendant in *Fensterer,* is unable to cross-examine in the manner he wishes due to the lost videotape. Nonetheless, he has an *opportunity* for effective cross-examination because Murray can testify at trial and the scope of that cross-examination should not be restricted. Accordingly, we hold that defendant's right to confrontation is not violated by the state's loss of the videotape. The trial court erred in concluding otherwise.

■        Turning to the state's compulsory process argument, we note first that defendant's right to compulsory process, secured by Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution, is violated only if the state withholds evidence that is material and favorable to the defense. *State v. Pelham*, 136 Or App 336, 344-46, 901 P2d 972 (1995), *rev den* 323 Or 264 (1996);

*State ex rel Meyers v. Howell*, 86 Or App 570, 578, 740 P2d 792 (1987). In determining whether evidence is material and favorable, the compulsory process analysis is identical to the due process analysis described below. Because that part of the compulsory process review is absorbed into the due process analysis, we adopt the current due process analysis for purposes of this claim, and accordingly, turn directly to it. *See Pennsylvania v. Ritchie*, 480 US 39, 56, 107 S Ct 989, 94 L Ed 2d 40 (1987) (so stating in a similar case in which the defendant was denied access to evidence).

■   As relevant here, the Due Process Clause of the Fourteenth Amendment[5] guarantees for a criminal defendant access to evidence in the state's possession that "is material either to guilt or to punishment * * *." *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963). To support a claim of denial of due process on the ground that constitutionally material evidence was lost, the defendant must make some showing that either the state acted in bad faith in failing to preserve the evidence or that the evidence sought to be discovered will be favorable. *State v. Hendershott*, 131 Or App 531, 535, 887 P2d 351 (1994), *rev den* 320 Or 587 (1995) (citing *Arizona v. Youngblood*, 488 US 51, 109 S Ct 333, 102 L Ed 2d 281 (1988)); *State ex rel Juv. Dept. v. Huskey*, 130 Or App 419, 423-24, 882 P2d 1127 (1994), *rev den* 320 Or 567 (1995). Where the state has not acted in bad faith, the defendant must show that the claim of favorableness is genuine, not speculation, *State v. Hockings*, 29 Or App 139, 143, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978), and that comparable evidence cannot be obtained "by other reasonably available means." *California v. Trombetta*, 467 US 479, 489, 104 S Ct 2528, 81 L Ed 2d 413 (1984).

■   Here, defendant concedes that the state did not act in bad faith in failing to preserve the videotape. Thus, defendant has the burden of showing that there was a reasonable likelihood that the videotape would provide evidence that would be favorable to a material element of his defense and

---

[5] The Due Process Clause of the Fourteenth Amendment provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"

that he can not obtain comparable evidence through other reasonable means.

Murray testified that he formulated his descriptions of defendant's performance of the FSTs from the lost videotape, and the trial court found that Murray's testimony and incident report as to those facts were accurate. Thus, we avoid "the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Trombetta*, 467 US at 486. Those facts included evidence that defendant performed satisfactorily on three of the FSTs, fair on one test and could not perform the heel-to-toe test, for which defendant arguably had a reasonable explanation (*i.e.*, three back surgeries and numbness in his legs). The videotape also would have illustrated that, to some extent, defendant's physical and mental abilities were unimpaired by alcohol.[6] A factfinder could find that that evidence is sufficient to rebut the Intoxilyzer test result, which, in turn, would be favorable to a material element of the defense as it would tend to establish that defendant was not under the influence of alcohol. *See State v. Clark*, 286 Or 33, 44, 593 P2d 123 (1979) (holding that in a DUII prosecution, a defendant may offer evidence to rebut the accuracy of the results of a breath test). Accordingly, defendant has met the first burden.

As to the second burden, the state argues that "[d]efendant had [a reasonable] alternative means of introducing that evidence: through the police report and through the testimony of * * * Murray." Though the state is correct that defendant can produce evidence of his performance of the FSTs and of his physical and mental abilities through Murray's testimony, the state's "contention * * * must be analyzed in terms of the reality of this case." *State v. Koennecke*, 29 Or App 637, 644, 565 P2d 376, *rev den* 280 Or 171 (1977).

In general, the prosecution of a DUII case depends heavily on the opinion of the arresting officer in determining

---

[6] On the Alcohol Influence Interview Report prepared by Murray after defendant's arrest, Murray reported that the color of defendant's face was "[a]pparently normal," that his eyes were "[a]pparently normal," that his pupils "[a]ppear[ed] normal," that his clothing was "orderly," and that his speech was "slight[ly] slurred[.]"

whether a defendant's "mental or physical faculties were adversely affected * * * to a noticeable or perceptible degree." *State v. Gaylor*, 19 Or App 154, 163-64, 527 P2d 4 (1974). Here, in the absence of the videotape, a jury would have only Murray's interpretation of defendant's performance of the FSTs, demeanor, appearance and speech patterns, which, as noted, were to some extent not noticeably affected by alcohol. Of course, defendant may, but does not have to, offer his own version of the events to rebut Murray's conclusions and the Intoxilyzer results. However, defendant's testimony is not an acceptable substitute, because defendant's testimony carries the risk that the jury will view that testimony as extraordinarily self-serving, whereas that risk is not present in the videotape evidence. Accordingly, the videotape evidence is unique because it would provide defendant with an objective video replay of the events from which a jury *could draw its own conclusions.*

Because the lost videotape would provide evidence that defendant performed satisfactorily on some of the FSTs and because it would have shown, to some extent, no impairment in defendant's physical coordination and mental abilities, it was material and favorable; and because its replay would have given defendant a unique opportunity to permit the jurors to form their own opinions as to defendant's intoxication level, defendant is not able to obtain comparable evidence from Murray's testimony. Thus, as to evidence of defendant's performance of the FSTs, we hold that the state's loss of the videotape violated defendant's due process rights.

■ Notwithstanding that constitutional violation, we agree with the state that dismissal was too severe a sanction to impose. *See State v. Lance*, 48 Or App 141, 145, 616 P2d 546 (1980) (holding that dismissal was improper in a case where the defendant's due process rights were violated when the state negligently destroyed exculpatory evidence). Defendant argues that, because in *Smith* we affirmed the trial court's order of dismissal in "almost the identical [factual] scenario,"[7] we must similarly affirm the trial court's order of

---

[7] In *Smith*, the state inadvertently destroyed "a television tape depicting [the] defendant's performance of certain physical dexterity tests[,]" 42 Or App at 545, and did not dispute that the lost videotape contained material and favorable evidence. *Id.* We held that, under the rule of *Brady*, the defendant's due process rights had been violated. *Id.* at 546.

dismissal here. However, we are not bound by that aspect of our earlier decision in *Smith* because there the state did not seek review of, or in any other way challenge, the remedy imposed. The state has done so here.

■ The customary sanction for unconstitutional police conduct generally requires suppression of the related evidence, not dismissal. *See, e.g., State v. Testa*, 155 Or App 52, 56, 964 P2d 274 (1998). However, we cannot readily apply that sanction here because, although the videotape was lost, evidence of defendant's performance of the FSTs is exculpatory and may still be presented to the factfinder through Murray's testimony, though not as forcefully as the video replay would show. Because defendant may wish to use that evidence in his defense and because decisions of trial strategy should be left to the discretion of the advocate, we apply a discretionary suppression remedy. On remand, defendant may choose whether he wants the jury to hear evidence of his performance on some, all, or none of the FSTs.

Defendant's alleged incriminating statements present a different question, however. As noted, defendant disputed making those statements, and the trial court declined to determine who was being truthful, defendant or Murray. In the absence of such a credibility finding, we cannot determine whether defendant's claim that the lost videotape is exculpatory impeachment evidence is genuine or mere speculation. In turn, we cannot not say whether the state's loss of that evidence violated defendant's due process rights as to the incriminating statements. Thus, on remand, the trial court must make a finding as to whether defendant made the statements in question. *See Ehly*, 317 Or 66, at 74-75 ("What actually happened is a question of fact for the trial court."). If the court determines that defendant did, in fact, make the statements, then, under our previous analysis, defendant's due process rights were not violated by the destruction of the evidence, and those statements may be offered as evidence. However, if the court finds that defendant did not make the statements, the videotape evidence would be material and favorable to defendant as impeachment evidence regarding the alleged statements. Loss of the videotape would be of constitutional magnitude. In that event, the remedy would be suppression of the alleged statements.

Judgment of dismissal reversed and remanded with instructions for trial court to enter order allowing or suppressing evidence of defendant's performance of FSTs and, after making a credibility finding as to whether alleged incriminating statements were made by defendant, allowing or suppressing evidence of those statements.