DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHRISTOPHER ANTONIO WARD,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3620

[May 27, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cheryl A. Caracuzzo, Judge; L.T. Case No. 50-2017-CF-012066-AXXX-MB.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

In appellant's appeal of his conviction for burglary of an occupied dwelling and resisting an officer without violence, he contends the court erred in refusing to give a special instruction on lost evidence. He claimed that the video from an officer's body-cam was not available, and therefore he should have been entitled to an instruction that the jury could infer it was against the State's interest. Because the instruction was not an accurate instruction on the law and the evidence was only potentially exculpatory, the court did not err in denying the instruction. As to this issue, and the remaining issues raised, we affirm.

The State charged appellant with burglary of an occupied dwelling and resisting an officer without violence. The special jury instruction requested by appellant would affect only the resisting without violence charge. We summarize the facts with that in mind.

The victim observed appellant attempting to enter her house through a window. She called the police and an officer arrived within three minutes.

The officer went behind the house and observed appellant attempting to exit the home through a window. The officer, dressed in her police uniform, drew her weapon, told appellant not to move, and demanded to see his hands. He complied at first but then pushed himself back into the house and ran. The officer entered the residence through the back door and chased appellant out of the front door.

During the chase through the house, the officer turned on her body-camera. As she chased him, she yelled for him to stop, but he did not stop until he was apprehended in a neighboring yard by another officer. When asked what happened to the video footage from her body-cam, the officer testified that she had "some sort of technical glitch." On cross-examination, she further stated that the video should be there, but it was not. "Some technical issue happened where we were switching from one body-camera to another . . . . Just never got it, I guess." Later, she said that everything was downloaded to a website, but she did not know what happened to it.

After the testimony, appellant requested an instruction on lost evidence which would state, "If you find that the State or their agent has lost, destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against the interest of the State." He claimed that the failed body-cam video qualified as lost evidence, and it was relevant as to the issue of resisting arrest. Without it, the jury could not hear how loudly the officer was yelling for appellant to stop. The video could also allow the defense to impeach the accuracy of the officer's memory.

Appellant argued that the video was material based on this court's decision in *State v. Davis*, 14 So. 3d 1130 (Fla. 4th DCA 2009), in which we held that where evidence has been lost or destroyed, the trial court may consider giving an instruction to permit the jury to infer that the lost evidence was exculpatory. The trial court disagreed that *Davis* applied and denied the requested instruction.

The jury found appellant guilty as charged and found that the dwelling he entered was occupied. They also found that he resisted the officer without violence. The court adjudicated him guilty of both charges and sentenced him to thirty years in prison as a prison releasee reoffender and a violent career criminal. He appeals.

In this appeal, appellant challenges the court's denial of his special jury instruction. Denial of a request to give a special jury instruction is error if three elements are met: "(1) the special instruction was supported by the

2

evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing."  *Garrodo v. State*, 97 So. 3d 291, 297 (Fla. 4th DCA 2012) (quoting *Stephens v. State*, 787 So. 2d 747, 756 (Fla. 2001)).

Appellant argues that the evidence of the body-cam video was lost and therefore he was entitled to a jury instruction based upon *Davis*.  In *Davis*, a videotape of a field sobriety test in a felony DUI case was lost by the State.  14 So. 3d at 1131.  The officer conducted and recorded the test and had viewed it.  But when he attempted to copy it from the hard drive of the computer to a DVD (presumably to give to defense counsel who had requested it), it was lost.  The trial court dismissed the charges against the defendant because of the loss of the evidence.  On appeal, our court first explained that the loss or destruction of material exculpatory evidence by the State violates a defendant's due process rights:

> Where lost or unpreserved evidence is "material exculpatory evidence," the loss of such evidence is a violation of the defendant's due process rights and the good or bad faith of the State is irrelevant.  *State v. Muro*, 909 So. 2d 448, 452 (Fla. 4th DCA 2005); *see also Kelley v. State*, 486 So. 2d 578, 581 (Fla. 1986) ("'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.'" (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963))).  **Lost or unpreserved evidence is "material" in this sense "if the omitted evidence creates a reasonable doubt that did not otherwise exist."**  *State v. Sobel*, 363 So. 2d 324, 327 (Fla. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 109, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)).

*Davis*, 14 So. 3d at 1132 (emphasis added).  *Davis* determined that the videotape was material evidence, but that dismissal was too harsh a sanction.  The opinion explained: "An evaluation of an individual's impairment is necessarily somewhat subjective, and the tape would have provided a jury with the opportunity to assess for itself whether the defendant was impaired."  *Id.*  *Davis* relied on *State v. Zinsli*, 156 Or. App. 245, 966 P.2d 1200 (1998), which explained that a defendant's testimony of his sobriety was not an "acceptable substitute" for a videotape of the actual field sobriety test, when a jury could find the defendant's testimony "self-serving" as compared to an officer's testimony.  Thus, the field test

3

was "unique" in allowing the jury to draw its own conclusions on the sobriety issue.

We concluded, however, that dismissal of the charges was too harsh a sanction in that case. Thus, we reversed and suggested various lesser sanctions which the trial court could consider, including an instruction that the jury may find the lost evidence exculpatory.

It may seem as though *Davis* provides a more lenient view of a defendant's right to sanctions where the State loses evidence, because the opinion agreed with the trial court that the DUI tape was material, but did not state the tape must also be exculpatory. Because *Davis* relied on *Zinsli*, an analysis of that case indicates such evidence must be both material and favorable to the defendant. In *Zinsli*, the State had also lost a field sobriety test. However, the investigating detective had produced a report in which he had viewed the videotape to verify his findings. Portions of the report were favorable to the defendant, as he passed several of the tests. The report also contained several incriminating statements made by the defendant, which he testified that he did not make. The video of the test could have shown both his performance on the tests and revealed whether he made the statements attributed to him in the report.

*Zinsli* noted, "[t]o support a claim of denial of due process on the ground that constitutionally material evidence was lost, the defendant must make some showing that either the state acted in bad faith in failing to preserve the evidence or that the evidence sought to be discovered will be favorable." 156 Or. App. at 1204. Further, "[w]here the state has not acted in bad faith, the defendant must show that the claim of favorableness is genuine, not speculation, and that comparable evidence cannot be obtained 'by other reasonably available means.'" *Id.* at 1204 (citations omitted.). Because the officer's report showed that the field sobriety test was at least in part favorable to the defendant, the defendant's due process rights were violated by its loss. Thus, *Zinsli* also supports the position that the evidence must be both material and exculpatory to be a due process violation.

*Davis* was called into doubt in *Bennett v. State*, 23 So. 3d 782 (Fla. 2d DCA 2009), where the Second District pointed out that the field sobriety video could have just as likely supported the State's witness's testimony regarding how Davis appeared in the test, meaning it was only potentially exculpatory.

*Bennett* provides a thorough review of the law regarding lost evidence. It notes that in *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme

Court held that under the due process clause, the State had the duty to preserve constitutionally material evidence. In *Trombetta* the Court explained:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, **evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.**

467 U.S. at 488-89 (footnote omitted) (citation omitted) (emphasis added).

The Supreme Court went further in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), and held: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

We followed both *Trombetta* and *Youngblood* in *State v. Muro*, 909 So. 2d 448, 453-54 (Fla. 4th DCA 2005). *Muro* was cited in *Davis*, and reversed the dismissal of charges against a defendant, because lost evidence was only potentially exculpatory and not constitutionally material. That *Davis* relied on *Muro* shows that it did not intend to set a new standard of materiality, contrary to that of the Supreme Court.

In reviewing the jury instruction in question here, it does not comport with *Trombetta, Youngblood,* or *Muro*. The instruction would have allowed the jury to infer that the evidence was contrary to the State, if the State lost evidence "whose contents or quality are in issue." With that instruction, the jury could have found against the State even if the evidence was not exculpatory. Simply because the contents of the videotape may have some bearing on an issue is clearly insufficient to constitute a due process violation. *Youngblood.*

Not only is the wording of the instruction erroneous, the evidence was also not constitutionally material. In fact, defense counsel admitted that it could constitute impeachment evidence. The value of lost evidence for impeachment would not constitute a due process violation, as it would not meet the definition of constitutional materiality in *Trombetta.*

In any event, we would also note that whatever was on the videotape showed only what occurred *after* the officer entered the residence. The crime of resisting without violence was complete before the officer turned on her body-cam as she ran after the appellant. The uniformed officer confronted defendant with a gun as he was exiting the home through the back window. In his confession, appellant admitted being confronted by the officer. She told him not to move and to show his hands. He complied momentarily and then ran. At that point, he committed the crime of resisting arrest, regardless of the ensuing chase. *See* § 843.02, Fla. Stat. (2017) ("Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree[.]") *See Palmer v. State*, 112 So. 3d 606, 607 (Fla. 4th DCA 2013) ("An officer's command to stop is a lawful execution of a legal duty if there is reasonable suspicion to support the stop."). Therefore, the body-cam evidence could not have exonerated appellant.

In appellant's second issue on appeal, he argues that the court committed fundamental error by failing to conduct a colloquy with him regarding his right to testify. This issue is controlled by *Torres-Arboledo v. State*, 524 So. 2d 403 (Fla. 1988). In that case, the Florida Supreme Court ruled that although there is a constitutional right to testify under the due process clause of the United States Constitution, that right does not fall within the category of fundamental rights which must be waived on the record by the defendant himself. 524 So. 2d at 409-11. The appellant concedes that *Torres-Arboledo* is controlling.

Finally, appellant argues that the court erred in denying his motion to correct sentencing error. He claimed his sentence was illegal because the State failed to introduce record evidence of his criminal history to support his classification as a violent career criminal. As the State notes, however, his counsel conceded to his qualification as a Violent Career Criminal based upon counsel's review of his criminal history. Therefore, counsel stipulated to this VCC designation, and the State was not required to introduce specific records of prior felonies.

For the foregoing reasons, we affirm the judgment of conviction and sentence.

KLINGENSMITH and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***