524 December 4, 2024 No. 870

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER GRAGG McLAIN,
*Defendant-Appellant.*
Marion County Circuit Court
22CR23975; A180783

Daniel J. Wren, Judge.

Submitted September 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

ORTEGA, P. J.

Reversed and remanded.

ORTEGA, P. J.

Defendant challenges his conviction for driving while under the influence of intoxicants (DUII), ORS 813.010. On appeal, defendant raises four assignments of error, three of which are based on the state's loss of a video recording of defendant waiting to perform a breath test at the police station. The breath test showed that defendant had a blood alcohol content (BAC) of .10 percent. After a pretrial hearing, the trial court ruled that the loss of the video evidence was a discovery violation, but did not violate defendant's right to due process, and the trial court imposed no sanction or remedy for the violation. Defendant was subsequently tried and convicted of DUII.

Relying on *State v. Zinsli*, 156 Or App 246, 966 P2d 1200, *rev den*, 328 Or 194 (1998), we conclude that the loss of the video evidence violated defendant's right to due process. While defendant was waiting to perform the breath test, the police officer who arrested him asked defendant questions from an "Intoxicant Influence Report," and defendant responded coherently to the questions. During that interaction, the officer did not observe any signs of intoxication. Based on defendant's responses as recorded in the officer's report and the officer's testimony about his demeanor, we conclude that there is a reasonable possibility that defendant could have used the video evidence of the exchange to rebut and impeach the officer's opinion that he was impaired. In addition, defendant could have used that evidence to call into question the accuracy of the breathalyzer test result. *State v. Clark*, 286 Or 33, 44, 593 P2d 123 (1979). The lost video evidence was material and favorable to defendant, and he was unable to obtain comparable evidence by other means. Therefore, the trial court erred in ruling that loss of the evidence was not a due process violation, and the error was not harmless beyond a reasonable doubt. Accordingly, we reverse defendant's conviction for DUII and remand for the trial court to address in the first instance the appropriate remedy or sanction for the due process violation.[1]

---

[1] Because we conclude that loss of the video evidence was a due process violation, we do not address defendant's other assignments of error. Generally, we must decide questions of statutory law before we may decide constitutional issues. *Zinsli*, 156 Or App at 249. But here, the state concedes that loss of the

## FACTUAL AND PROCEDURAL BACKGROUND

"In determining whether a constitutional right of defendant was violated, we are bound by the trial court's findings of fact so long as they are supported by sufficient evidence in the record. We must decide whether the trial court correctly applied legal principles to those facts." *Zinsli*, 156 Or App at 249-50 (citation omitted). With that standard of review in mind, we summarize the relevant facts.

At about 10:45 p.m., Officer Keniston responded to the site of a motor vehicle crash. Defendant's truck had "heavy front-end damage," and defendant was standing nearby talking on his phone and trying to arrange a tow. The truck had hit a tree, which was missing some bark, and there was a piece of metal from the truck embedded in the tree. The truck's airbags had deployed. Defendant told Keniston that an animal had run into the road causing him to swerve and hit the tree.

Defendant smelled of alcohol, his eyes were bloodshot and watery, and he was moving slowly. He reported having had one drink that night. Keniston administered field sobriety tests (FSTs). On the horizontal gaze nystagmus test, the officer observed four out of six clues of impairment. On the walk-and-turn test, he observed four out of eight clues. On the one-leg-stand test, he observed one out of four clues. Based on those results and his observations, Keniston believed that defendant drove while impaired and he arrested defendant.

At the police station, Keniston administered a breath test at about 11:45 p.m. During the 15-minute waiting period before administering the test, Keniston asked defendant questions from the Intoxicant Influence Report. Defendant answered the questions coherently and had no trouble communicating with the officer. He said that he had been at his mother's house before driving, that he had eaten an egg roll about an hour before, and that he had consumed one or two 16-ounce beers. Defendant said that his eyes were usually bloodshot and watery due to allergies

---

video evidence was a violation of ORS 135.815. Accordingly, we focus on the constitutional question.

and noted that he was feeling stressed. While interacting with defendant during the waiting period, Keniston did not observe any indicators of impairment, and defendant was cooperative. Keniston did not perform physical tests during that time, and defendant was sitting on a stool next to the Intoxilyzer machine the entire time. The breath test showed a BAC of .10 percent.

Keniston attempted to copy the video recording of his interaction with defendant during the breath test so that it could be admitted into evidence but, unbeknownst to him, the file transfer was not successful. When he copied the video file onto his desktop computer, the media player was transferred, but not the content of the video file. The recording was automatically deleted after a 50-day retention period.

Based on that lost evidence, defendant filed a pretrial motion to dismiss the case or to exclude the breath test evidence. After a hearing on the motion, the trial court ruled that the loss of the video evidence was a discovery violation, but not a due process violation. The trial court declined to dismiss the case or exclude the breath test evidence but indicated that defense counsel would be able to examine the officer about his observations of defendant during the waiting period and his failure to preserve the evidence.

At his jury trial, the state's witnesses included Keniston and a forensic scientist from the Oregon State Police crime laboratory. The defense called three expert witnesses and defendant's mother. The court admitted exhibits, including photographs of damage to defendant's truck, the breath test report, and a copy of the Intoxicant Influence Report. The jury was instructed that defendant was under the influence of intoxicating liquor if his physical or mental faculties were adversely affected by the use of intoxicating liquor to a noticeable or perceptible degree, or if his BAC was equal to or greater than .08 percent. The jury found defendant guilty of DUII.

## ANALYSIS

On appeal, defendant's first three assignments of error are based on the loss of the video recording of

defendant's interaction with the officer while waiting to take the breath test. As noted, at the pretrial hearing, the trial court ruled that the loss of the video evidence was a discovery violation, but not a due process violation, and the trial court imposed no sanction or remedy. On appeal, the state concedes that the loss of the evidence violated its discovery obligations under ORS 135.815(1)(a) and (b).[2] We focus on whether the loss also violated defendant's right to due process.

Because the Oregon Constitution does not contain a due process provision, we evaluate claims of due process violations under the United States Constitution. *State v. Faunce*, 251 Or App 58, 66, 282 P3d 960 (2012), *rev den*, 353 Or 203 (2013). The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant access to evidence in the prosecutor's possession that is favorable to the defendant and material either to guilt or to punishment. *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963); *see also State v. Michener*, 25 Or App 523, 532, 550 P2d 449 (1976) (stating that the *Brady* rule "requires disclosure of material evidence where a defendant establishes some reasonable possibility, based on concrete evidence rather than a fertile imagination, that it would be favorable to his cause.").

Due process also imposes a duty on the state to preserve evidence. *California v. Trombetta*, 467 US 479, 488, 104 S Ct 2528, 81 L Ed 2d 413 (1984). "To establish a due process violation resulting from the state's failure to preserve evidence, a defendant need not show that the

---

[2] ORS 135.815 provides in relevant part:

"(1) Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to a represented defendant the following material and information within the possession or control of the district attorney:

"(a) The names, addresses and telephone numbers of persons whom the district attorney intends to call as witnesses at any stage of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons.

"(b) Any written or recorded statements or memoranda of any oral statements made by the defendant, or made by a codefendant if the trial is to be a joint one."

By losing the video evidence, the state failed to disclose recorded statements of the officer and defendant.

state acted in bad faith if it was apparent before the evidence was destroyed that the evidence was favorable and was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Faunce*, 251 Or App at 67 (internal quotation marks omitted). "Favorable evidence for a defendant can be either exculpatory or impeaching." *Id.* However, when the state fails to preserve merely "potentially useful" evidence, then the defendant must show that the state acted in bad faith. *Id.* "Regardless of the quality of the evidence, the burden is on the defendant to make the necessary showings." *State v. Dikeos*, 330 Or App 698, 712, 544 P3d 1020, *rev den*, 372 Or 718 (2024).

Here, in determining that there was no due process violation, the trial court stated that the video evidence was "an objective piece of evidence that says [defendant] can answer questions," and the trial court observed that the evidence was "neutral" rather than "favorable" to defendant. The trial court also indicated that defendant would be able to obtain comparable evidence by cross-examining the officer at trial in a manner similar to how the officer had been questioned at the pretrial hearing.

On appeal, defendant challenges those rulings. He argues that the lost evidence was "objective, unbiased, * * * highly probative in the context of this case, and defendant lacked an adequate substitute for it." The state responds that "the lost video evidence of defendant sitting in the intoxilyzer room was merely 'potentially useful' and not materially exculpatory because, at best, it *might* have exonerated defendant." (Emphasis in original.)

In evaluating those arguments, we begin with *Zinsli*, 156 Or App at 254, in which we held that the state's loss of video evidence of the defendant's performance on FSTs violated the defendant's right to due process. First, we determined that the evidence was favorable and material because it would have shown that the "defendant performed satisfactorily on some of the FSTs and * * * it would have shown, to some extent, no impairment in [the] defendant's physical coordination and mental abilities." *Id.* Second, in determining whether the defendant could have obtained

comparable evidence by other means, we emphasized the unique quality of video evidence in DUII prosecutions:

> "In general, the prosecution of a DUII case depends heavily on the opinion of the arresting officer in determining whether a defendant's mental or physical faculties were adversely affected to a noticeable or perceptible degree. Here, in the absence of the videotape, a jury would have only [the officer's] interpretation of defendant's performance of the FSTs, demeanor, appearance, and speech patterns, which, as noted, were to some extent not noticeably affected by alcohol. Of course, defendant may, but does not have to, offer his own version of the events to rebut [the officer's] conclusions and the Intoxilyzer results. However, defendant's testimony is not an acceptable substitute, because defendant's testimony carries the risk that the jury will view that testimony as extraordinarily self-serving, whereas that risk is not present in the videotape evidence. Accordingly, the videotape evidence is unique because it would provide defendant with an objective video replay of the events from which a jury *could draw its own conclusions*."

*Id.* at 253-54 (internal quotation marks and citation omitted; emphasis in original).

As in *Zinsli*, we conclude that the loss of the video evidence in this case violated due process. Defendant does not argue that the state acted in bad faith in losing the evidence. Nevertheless, defendant met his burden to show that there was a reasonable likelihood that the lost recording would have provided evidence "that would be favorable to a material element of his defense" and that he was not able to "obtain comparable evidence through other reasonable means." *Id.* at 252-53.

During the waiting period before administering the breath test, Keniston used the Intoxicant Influence Report to ask defendant a list of questions to which defendant responded coherently. Throughout the exchange, Keniston did not observe any signs of intoxication. If he had, he would have noted that on the second page of the report, which lists common signs of intoxication. Based on the report, we can tell that defendant told the officer that he was "fine," and defendant rated his level of intoxication as one on a scale of

one to ten. In *Zinsli*, we relied on the police officer's Alcohol Influence Interview Report to conclude that the lost videotape would have illustrated, to some extent, that the defendant's physical and mental abilities were unimpaired by alcohol. *Id.* at 253 n 6. Similarly, here, defendant's answers to the questions on the Intoxicant Influence Report, as well as Keniston's testimony about their exchange, indicate that defendant could have used the recording to rebut or impeach Keniston's opinion that defendant was impaired by alcohol.

In addition, defendant could have used the lost video evidence to rebut or impeach the Intoxilyzer test result. In *Clark*, 286 Or at 35, the defendant was convicted of DUII based in part on a breathalyzer test, which showed that his BAC was .13 percent. The Supreme Court held that "the defendant may offer testimony of non-expert witnesses relating to any and all of the common symptoms or 'signs' of intoxication for the purpose of impeachment of the accuracy of" a breathalyzer test "without first laying a 'foundation' by expert testimony[.]" *Id.* at 44. Although the issue here does not involve whether the evidence was expert testimony, *Clark* establishes that defendants in DUII cases can use evidence of their conduct and demeanor to show that there is such a disparity between what the breathalyzer test shows and other facts that the jury should infer that the test was in some way defective or inaccurate. *Id.* at 39.

Therefore, because defendant could have used the lost video evidence to rebut or impeach both Keniston's opinion that he was impaired and the Intoxilyzer test result, defendant met his burden of showing that the lost video evidence was material and favorable. And, as explained above, given the unique quality of video evidence in DUII cases, defendant also met his burden of showing that he was unable to obtain comparable evidence by other reasonably available means. We conclude that the state violated defendant's right to due process when it lost the video recording of defendant's interactions with the police officer during the waiting period before taking the breath test.

In arguing otherwise, the state claims that the lost video evidence of defendant sitting in the Intoxilyzer room was merely potentially useful and not material or

exculpatory. The state points out that defendant did not perform any physical tests while waiting to take the breath test and, in *Zinsli*, the state lost a video recording of the defendant satisfactorily performing several FSTs.

It may well be that the lost video evidence in *Zinsli* was more favorable to the defendant than the lost evidence at issue here. Nevertheless, given what we can discern about the lost evidence from the Intoxicant Influence Report and from the officer's testimony at the pretrial hearing, defendant met his burden of showing a reasonable likelihood that the evidence would have been favorable and material to his defense. Defendant could have used the video evidence of his demeanor and his answers to the officer's questions to impeach the officer's opinion that he was impaired and to raise doubts about the Intoxilyzer result. In addition, that evidence could have provided defendant with "an objective video replay of the events from which a jury could draw its own conclusions." *Zinsli*, 156 Or App at 254 (emphasis omitted). Therefore, the trial court erred when it ruled that the state's loss of the evidence was not a due process violation.

Under the federal constitution, the state bears the burden to prove that any error was harmless beyond a reasonable doubt. *State v. Osborn*, 315 Or App 102, 109, 500 P3d 61 (2021). Here, we conclude that the error was not harmless. If the trial court had determined that there was a due process violation, then it might have imposed the requested remedy of excluding evidence of the breath test result, and we cannot say that the jury would have convicted defendant without that evidence. Indeed, the other evidence of defendant's guilt was not overwhelming. The only signs of impairment that the officer observed at the crash site were a slight odor of alcohol, bloodshot and watery eyes—which defendant attributed to allergies and which he argued at trial could have been caused by the impact of the airbags—and defendant's slow movements. Regarding the FSTs, the officer did observe clues of impairment, but he observed only one out of four clues on the one-leg-stand test. Therefore, without a breath test showing that defendant had a BAC of .10 percent, we cannot say beyond a reasonable doubt that the jury would have found him guilty of DUII.

In *Zinsli*, 156 Or App at 254, we determined that dismissal was too severe a sanction to impose for the due process violation. We pointed out that "[t]he customary sanction for unconstitutional police conduct generally requires suppression of the related evidence, not dismissal." *Id.* at 255. Here, when considering remedies, the trial court noted that excluding evidence of what occurred in the Intoxilyzer room, including defendant's answers to Keniston's questions, was not an appropriate remedy because that evidence was helpful to defendant. The trial court also noted that exclusion of the breath test result was not appropriate because there was no testimony about any problems with the Intoxilyzer machine or the officer's administration of the test. However, for the reasons stated in *Clark*, 286 Or at 39, 44, and as already explained, the lost video evidence could have been used to call into question the accuracy of the Intoxilyzer result. As a result, exclusion of the breath test result may be an appropriate remedy for the state's due process violation. We remand for the trial court to determine the appropriate remedy in the first instance, including whether all evidence of what occurred in the Intoxilyzer room should be excluded if the trial court excludes evidence of the breath test result.

Reversed and remanded.