376 January 7, 2026 No. 1

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DIANA MARY BASS,
*Defendant-Appellant.*

Coos County Circuit Court
23CR02919; A182492

Matthew P. Muenchrath, Judge.

Argued and submitted April 11, 2025, Corvallis High School, Corvallis.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this criminal case, defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of her motion to suppress evidence. Defendant argues that her due process rights under the Fourteenth Amendment to the United States Constitution were violated because the Coos Bay Police Department lost body and dash camera footage of the arrest. Defendant argues that the lost footage was material to her defense because it was reasonably likely to be exculpatory or impeaching, rebutting the state's evidence while corroborating defendant's, and comparable evidence to the lost footage could not be obtained by reasonably available means. The state responds that defendant did not establish a reasonable probability that the footage would be favorable to defendant's case. The trial court agreed with the state. We conclude that the trial court did not err in denying defendant's motion to suppress evidence because, given the trial court's findings of fact, by which we are bound, *State v. Zinsli*, 156 Or App 245, 249-50, 966 P2d 1200, *rev den*, 328 Or 194 (1998), defendant did not show that the missing footage would be material and favorable to her defense. Accordingly, we affirm.

BACKGROUND AND PROCEDURAL HISTORY

In the early morning hours of April 28, 2021, Coos Bay Police Sergeant Rule stopped defendant, suspecting her of driving under the influence of an intoxicant. Together, Rule's body and dash cameras recorded the stop, subsequent field sobriety tests (FSTs), on which defendant performed poorly, and a later breathalyzer test, which indicated that defendant's blood alcohol content (BAC) was .10 percent. Rule relied on the footage to help him prepare a police report of the arrest, which Rule used at trial to refresh his memory of the evening. Sometime between the arrest and the prosecution of the case, the footage from the body and dash cameras was inadvertently deleted from the police department's server, and therefore was not produced to defendant and was unavailable as evidence at trial.

Defendant waived a jury, and her case was tried to the court. After both parties had presented their evidence,

defendant moved to suppress some of Rule's testimony on the ground that the state's loss of the body and dash camera footage violated defendant's due process rights under *Zinsli*, 156 Or App at 249-50. Defendant explained that she was making a "two step" motion, and the motion to suppress was the first part. If the court granted the motion to suppress, defendant would seek a judgment of acquittal, requiring the court to determine "whether the state's case-in-chief survives without [the suppressed] portions [of Rule's testimony]." Without objection by either party, the court relied on the evidence that had already been presented to decide the motion to suppress.

Defendant argued that the missing video footage was material to her defense based on discrepancies between Rule's and defendant's testimony about what had occurred during three parts of the encounter: (1) Rule and defendant had testified differently about the reasons for the initial stop, specifically, whether defendant had committed traffic violations that could indicate impairment; (2) Rule and defendant testified differently about the circumstances surrounding the FSTs, disagreeing about what defendant had told Rule about her medical conditions and disability and about whether flashing lights were present that could have affected her ability to perform the tests; and (3) Rule and defendant testified differently about what had happened before the breathalyzer test, with Rule testifying that the waiting period was restarted because defendant was chewing gum, while defendant denied that she was chewing gum and testified that Rule did not replace the mouthpiece on the Intoxilyzer machine.

The trial court denied defendant's motion. On appeal, defendant argues that the trial court erred in denying the motion to suppress evidence because the missing footage is material to her defense, as it would rebut the BAC results and impeach Rule's testimony related to all three of the identified aspects of the encounter and his opinion that defendant was impaired.[1] She relies on the fact that, on cross-examination, Rule acknowledged that in a previous

---

[1] As explained below, we understand the court to have addressed both parts of defendant's "two step" motion (the motion to suppress and the motion for judgment of acquittal (MJOA)) in parts of its analysis. Defendant does not assign error to or otherwise dispute the court's approach in that regard; she challenges its reasoning only to the extent that it denied the motion to suppress.

case he testified that his police reports can sometimes contain inaccuracies. The state responds that, in light of the trial court's factual findings, defendant did not show a reasonable probability that the footage would be favorable to defendant's case.

## ANALYSIS

"In determining whether a constitutional right of defendant was violated, we are bound by the trial court's findings of fact so long as they are supported by sufficient evidence in the record. We must decide whether the trial court correctly applied legal principles to those facts." *Zinsli*, 156 Or App at 249-50.

The Due Process Clause of the Fourteenth Amendment guarantees criminal defendants access to evidence in the state's possession that is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963). As Justice Douglas highlighted in *Brady*, "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair." *Id.* A defendant's due process rights are violated when (1) the state acted in bad faith in failing to preserve evidence that was, at minimum, "potentially useful" or (2) the state did not act in bad faith but failed to preserve evidence that "would be favorable to a material element of [the defendant's] defense and * * * [the defendant] cannot obtain comparable evidence through other reasonable means."[2] *Zinsli*, 156 Or App at 252; *see also State v. Dikeos*, 330 Or App 698, 712-13, 544 P3d 1020, *rev den*, 372 Or 718 (2024) (adding that, when the good or bad faith of the state in failing to preserve evidence is uncertain, it is

---

[2] We acknowledge how difficult that burden is to satisfy for a criminal defendant where the state has inadvertently lost or destroyed evidence of disputed exculpatory value—a burden that we reiterate is set by federal precedent. A criminal defendant is required to prove the nature of the very evidence that the state lost or destroyed. Often, as in this case, that may leave the defendant with only one option: testifying to what they assume the evidence would have shown or revealed. But when that testimony conflicts with the testimony of a law enforcement officer, we recognize the reality that trial courts will often find the officer's testimony to be the more credible of the two. So the defendant is left with their word against that of the officer and without the benefit of objective evidence that may have vindicated the defendant's version of events—all due to the *state's* failure to preserve the evidence.

the quality of the evidence which must first be established to determine the proper test). Where, as the parties agree is true in this case, the state has not acted in bad faith, the defendant must show that "the claim of favorableness is genuine, not speculation." *Id.*; *see also State v. Michener*, 25 Or App 523, 532, 550 P2d 449, *rev den*, 276 Or 211 (1976) ("[T]he *Brady* rule requires disclosure of material evidence where a defendant establishes some reasonable possibility, based on concrete evidence rather than a fertile imagination, that it would be favorable to his cause."). Evidence can be favorable to a material element of the defense if it is exculpatory or impeaching. *State v. Faunce*, 251 Or App 58, 67, 282 P3d 960 (2012), *rev den*, 353 Or 203 (2013). If the missing evidence is shown to be favorable to a material element of the defense, the proper remedy is discretionary suppression of related evidence. *Zinsli*, 156 Or App at 254.

This is not the first time we have reviewed a motion to suppress evidence on the basis of the state having lost video and audio footage of an arrest for DUII. A number of cases—*see, e.g., id.*; *State v. McClain*, 336 Or App 524, 561 P3d 669 (2024), *rev allowed*, 373 Or 556 (2025); *State v. Peters*, 39 Or App 109, 591 P2d 761 (1979)—deal with the taping of stops and the administration of breathalyzer tests related to driving under the influence of intoxicants. In Oregon, it is illegal to drive a vehicle under the influence of an intoxicant or with a BAC of .08 percent or greater. ORS 813.010(1). However, an officer's assessment of impairment is somewhat subjective, and breathalyzer tests are not infallible. *Zinsli*, 156 Or App at 253-54.

As breathalyzer tests are not infallible, we have said that "defendants in DUII cases can use evidence of their conduct and demeanor to show that there is such a disparity between what the breathalyzer test shows and other facts that the [trier of fact] should infer that the test was in some way defective or inaccurate." *McClain*, 336 Or App at 531; *see also State v. Clark*, 286 Or 33, 39-40, 593 P2d 123 (1979) (stating the rule and listing physical symptoms or conduct that could indicate alcohol intoxication). Body and dash camera footage is often the best evidence of a defendant's conduct and demeanor because a "defendant's testimony

carries the risk that the jury will view that testimony as extraordinarily self-serving, whereas that risk is not present in videotape evidence." *Zinsli*, 156 Or App at 254.

On that basis, we conclude, as we have in the past, that the second prong of the *Zinsli* test for evidence lost without bad faith—*i.e.*, defendant cannot obtain comparable evidence by other reasonably available means—is easily met, because there is no other evidence comparable to the lost dash and body camera footage. *See id.* ("[The video]'s replay would have given defendant a unique opportunity to permit the jurors to form their own opinions as to defendant's intoxication level."); *see also McClain*, 336 Or App at 530 (repeating the analysis of *Zinsli*). What remains to decide is whether the trial court erred in determining that defendant failed to establish a reasonable likelihood that the lost footage would have been favorable to a material element of her defense and consequently denying her motion to suppress related evidence.

In contrast to the case at hand, the officers in *Zinsli* and *McClain* had observed very few signs of impairment, despite breathalyzer results over the legal limit.[3] In each of those cases, the police reports indicated that the defendants had performed well on FSTs.[4] *Zinsli*, 156 Or App at 253; *McClain*, 336 Or App at 526. Additionally, in *McClain*, the police report suggested that the defendant had coherently answered questions on an Intoxicant Influence Report prior to taking a breathalyzer test and showed no signs of impairment while in the waiting room. *McClain*, 336 Or App at 526-27. In each case, we decided that the missing footage was favorable to a material element of the defense because it was clear, viewing the facts consistently with the trial courts' findings, that the missing footage contained evidence of the defendants' conduct and demeanor that, when observed by the factfinder, would call into question the officers' impairment opinions and rebut the breathalyzer test

---

[3] In *Zinsli*, the defendant had returned a breathalyzer test result of .118 percent, and, in *McClain*, the result was .10 percent. *Zinsli*, 156 Or App at 248; *McClain*, 336 Or App at 526.

[4] In *Zinsli*, the defendant had performed well on all FSTs except the one that he would have been expected to perform poorly on because of his stated medical condition, three back surgeries and numbness in his legs. 156 Or App at 247-48.

results. *Zinsli*, 156 Or App at 253; *McClain*, 336 Or App at 531.

Here, the trial court applied the *Zinsli* test to each of the three areas identified by defendant—driving behavior justifying a stop, the conversation about defendant's disability and defendant's performance of the FSTs, and the administration of the breathalyzer test, including whether the waiting period was reset due to defendant chewing gum. In so doing, the trial court made findings of fact and applied the legal test to those facts. We review each in turn, accepting the trial court's explicit and implicit findings where they are supported by evidence. *Zinsli*, 156 Or App at 249-50. As we will explain, the trial court did not err.

First, the trial court found that Rule observed defendant make an unlawful turn and then exceed the speed limit while weaving in and out of her lane. In so finding, the trial court said, "even if there was some sort of sanction, I'm not going to eliminate all of that." It went on to say, "if you suppress part of [the testimony], you still have some of it. *** And so that the evidence could be brought in a reliable manner even though *** the video or audio was gone." As we understand it, the court reasoned that, even if it agreed with defendant that suppression was warranted for some of the testimony about defendant's driving behavior, enough information would remain that the court would not need to grant an MJOA on any element of the charge. Defendant's argument on appeal does not engage with the possibility that the court decided to suppress some of the testimony, and she does not take issue with the court considering both parts of defendant's "two-part" motion together. We understand the trial court to have determined that at least some of the dash cam footage was not likely to present evidence favorable to a material element of the defense because it would have shown traffic violations justifying a stop. We agree with the trial court's legal conclusion that that evidence was not favorable to the defense.

Moving on to defendant's arguments regarding the second issue—events during the stop itself—the trial court was not persuaded by defendant's testimony that flashing lights impacted defendant's performance on the FSTs. To

the contrary, the court found that Rule observed, both before and during the administration of the FSTs, "not just a little bit of impairment, but some significant cues and clearly impairment that would *** in other DUIIs, would lead to an arrest." Therefore, the trial court decided, the video evidence would be of no help to defendant in impeaching Rule's opinion of impairment or the breathalyzer results. Similarly, while both parties indicated that there was some discussion of defendant's medical conditions and video footage would shed light on that conversation, the trial court "found some real credibility issues" with defendant's testimony regarding that discussion. Implicitly crediting Rule's testimony about their conversation, the trial court determined that defendant did not show that she had informed Rule in detail about her medical conditions such that the lost footage would be useful for impeaching Rule's testimony or otherwise favorable to the defense. Based on those findings, we agree with the trial court's legal conclusion.

Finally, defendant argues that the missing footage of the Intoxilyzer room would show that she was not chewing gum, contrary to Rule's testimony that she was, and therefore was favorable to her defense for its impeachment value. She contends that that impeachment value would be further supported by the fact that, at trial, Rule admitted that past police reports he had written had contained inaccuracies. The court found that video footage in the Intoxilyzer room would only show that the required 15-minute waiting period was restarted, stating "if there was gum or there wasn't gum, the intoxilyzer test was started all over again. *** There's nothing in the evidence to indicate that that sample was in any way erroneous or that that wasn't an accurate test." For current purposes, we assume that defendant is correct that, if the video were to definitively show that she was not chewing gum, it would be at least minimally favorable to her defense by providing a basis for impeaching Rule's other testimony. However, the record does not support a finding that the missing video footage would have demonstrated that she was not chewing gum.

As noted above, under *Zinsli*, absent an assertion of bad faith, "the defendant must show that the claim of

favorableness is genuine, not speculation," *Zinsli*, 156 Or App at 252, rather than show that lost evidence would be "potentially useful," the standard for instances in which the state acted in bad faith in failing to preserve the evidence. *Dikeos*, 330 Or App at 712-13. At most, on the facts found by the trial court, it is possible that the video might have shown that defendant was not chewing gum. Under the facts of this case, we agree with the trial court's determination that defendant did not establish that the footage of the Intoxilyzer room would have been genuinely favorable to the defense.

Having determined that defendant did not meet her burden to show that the missing footage would be favorable to a material element of her defense as to any of the three areas she raised, we conclude that the trial court did not err in denying her motion to suppress the evidence.

Affirmed.